made in cases of real bankruptcy where questions arose affecting the bankrupt estate. They have no application here.

As the verdict was directed, after motion by both sides, there is no dispute about the value of the stocks at the dates taken or the several computations.

The judgment and order appealed from should be affirmed, with costs and disbursements to the respondent.

---

(152 App. Div. 677.) ·

O'HEHIR et al. v. CENTRAL NEW ENGLAND RY. CO.

(Supreme Court, Appellate Division, Second Department.   October 4, 1912.)

1. REFERENCE (§ 99*)—FINDINGS—INCONSISTENT FINDINGS.
   In one cause of action plaintiff sought to recover under a contract for excavating and constructing concrete work, which contract he alleged was completed on or before August 21st; and in another cause of action he sought to recover for work performed and materials furnished between August 21st and November 11th under a verbal agreement by defendant to pay the cost of labor and materials plus 10 per cent. Plaintiff testified that the original contract was completed on September 1st, and it appeared that plaintiff abandoned the work on October 26th. The referee found that the original contract was completed either on August 21st or September 1st, and that plaintiff was paid for work performed during September and October as ascertained by estimating the quantity under the written contract. Held, that the finding that plaintiff was paid for the work done in September and October at the same rates fixed by the written contract negatived the finding that the written contract had been completed previously.
   [Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 148–156; Dec. Dig. § 99.*]

2. JUDGMENT (§ 250*)—IN CONFORMITY TO PLEADINGS AND PROOF.
   Where plaintiff pleaded and testified that a written contract with defendant was completed on a certain date, and that work was done thereafter under a separate contract with different terms, a recovery for such subsequent work according to the terms of the written contract was not warranted by the pleadings and proof.
   [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 436; Dec. Dig. § 250.*]

3. CONTRACTS (§ 288*)—PERFORMANCE—APPROVAL OR DECISION OF ENGINEER.
   Where a contract for excavating and construction of concrete work provided that defendant's engineer should estimate the value of the work done, which should form the basis of partial payments on the contract price, there was no guaranty that absolutely accurate calculations as to the amount of work should be made, and in the absence of bad faith the engineer's estimate furnished the only basis for partial payments during the progress of the work.
   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1308–1317; Dec. Dig. § 288.*]

4. CONTRACTS (§ 288*)—PERFORMANCE—APPROVAL OF ENGINEER—CERTIFICATE OF PROGRESS—"VALUE OF PART OF THE WORK DONE."
   In a contract providing that defendant's engineer should estimate the value of the part of the work done as a basis for partial payments during the progress of the work, the "value of the part of the work done" was not necessarily the contract price of the cubic yards of excava-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion or of concrete constructed, but its value in relation to all the surrounding conditions, or the value which would result to defendant if the contractor stopped work at that particular point, which would not necessarily depend on the volume of materials removed or constructed.

·[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1308–1317; Dec. Dig. § 288.*]

5. CONTRACTS (§ 288*)—PERFORMANCE—APPROVAL OF ENGINEER—"ESTIMATE."

To "estimate" the amount of work done means to form an opinion from imperfect data, comparison, or experience, to calculate roughly, or to rate; and an "estimate" involves an exercise of judgment in determining the amount, importance, or magnitude of things with their other exterior relations.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1308–1317; Dec. Dig. § 288.*

For other definitions, see Words and Phrases, vol. 3, pp. 2492–2493.]

6. CONTRACTS (§ 288*)—PERFORMANCE—APPROVAL OF ENGINEER—EFFECT OF ERROR.

In a contract providing that defendant's engineer should estimate the value of the part of the work done as a basis for partial payments on the contract price, an error in judgment in the estimate, not the result of design, does not constitute fraud.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1308–1317; Dec. Dig. § 288.*]

Appeal from Special Term, Orange County.

Action by Patrick P. O'Hehir and another against the Central New England Railway Company. From a judgment for plaintiffs on the report of a referee, and an order granting an extra allowance, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

Elbert N. Oakes, of Middletown, for appellant.

M. N. Kane, of Warwick, for respondents.

WOODWARD, J. The complaint in this action attempts to set forth eight causes of action growing out of two contracts for the elimination of grade crossings in the state of Connecticut, and the action, being tried before a referee, has resulted in a judgment for the plaintiff, based upon the first, third, fourth, and eighth causes set forth. The first cause of action is based on the allegations that the plaintiffs are copartners, doing business at Warwick, N. Y.; that the defendant is a corporation organized under the laws of the state of New York, and that on the 17th day of September, 1906, the plaintiffs and defendant entered into a contract in writing for the elimination of a certain grade crossing at West Norfolk, in the state of Connecticut; that the plaintiffs should perform said work and furnish materials therefor, in accordance therewith and the specifications thereto attached and the plans accompanying said contract, at certain unit prices set forth in detail; that the defendant agreed to pay such prices therefor; that the time of performance was subsequently postponed from time to time, and that the contract also provided that, when such contract should have been completely performed, the chief

engineer should so certify in writing, and give a final estimate of the work done by the contractor, and a statement of the amount due and unpaid him therefor, and the defendant should within 30 days thereafter pay the full amount which should be so found due, including the percentages retained on former estimates; that on or before the 21st day of August, 1907, the plaintiffs duly performed all the conditions thereof on their part, and fully completed the same, and also performed extra work and furnished extra material therefor, as ordered and directed by said defendant under the terms of said contract; that upon completion of said work the plaintiff requested the defendant to furnish the final estimate, but that said defendant has unreasonably neglected and refused to furnish the same; that the agreed price and value thereof was the sum of $5,672, and that $4,676.11 has been paid thereon, and no more, though demand therefor has been made.

The second cause of action realleges the formal matters of copartnership and incorporation, and alleges that "between the 21st day of August, 1907, and the 11th day of November, 1907, plaintiffs performed work, labor, and services for and furnished materials to the defendant at West Norfolk, Conn., at its request, of the value of $1,669.96," and that no part thereof has been paid.

[1, 2] This second cause of action is entirely ignored by the learned referee, who treats all of the work and materials as having been furnished under the contract above alleged, although it is apparent from the pleadings and the proofs that the work at West Norfolk was not completed at the time the creditors of the plaintiffs placed attachments upon the plant, tools, and work on the 26th day of October, 1907, at which time the plaintiffs abandoned the work, and it was completed by other contractors. The plaintiffs' theory of this second cause of action is that the original contract was completed on the 21st day of August, as alleged in the pleadings, or on the 1st day of September, as testified to by one of the plaintiffs (which appears to be the only evidence in support of the allegation of the complaint), and that the further work and materials were furnished under a verbal agreement that the cost of labor and materials should be repaid to the plaintiffs, plus 10 per cent. for superintendence, etc., and this claim having been wholly disregarded, and the plaintiffs having been permitted to recover for all of the work, labor, and materials on the basis of the original contract, it seems entirely clear to us that the finding that the contract was completed on the 21st day of August, or on the 1st day of September, is wholly without evidence to support it. The learned referee found as a fact that:

"For the excavation and concrete work performed by plaintiffs at West Norfolk during the months of September and October, 1907, they were paid, as in preceding months, for the value of the work then performed as the same was ascertained by computing the quantity of work in cubic yards and paying therefor the respective unit prices named in said written contract."

If the contract was completed at the date mentioned in the complaint, or at the date testified to by the plaintiff, then the plaintiffs could not, under the bill of particulars, be entitled to have their com-

pensation fixed upon the basis of the contract, but upon the basis of the alleged oral agreement, and the findings of the referee are entirely inconsistent. Either the contract was not completed up to the time of the abandonment of the work on the 26th day of October, or the plaintiffs were entitled to have their second cause of action sustained, and upon the basis of the verbal contract; and yet the learned referee, finding that the contract was fully performed, we must assume as of the only date as to which there is any evidence of its full performance, on the 1st day of September, 1907, finds at the request of the defendant that the plaintiffs were paid for the excavation and concrete work upon this job, completed on the 1st of September, for the months of September and October of the same year at the rates fixed by the contract.

It seems to us that the finding that the contract was fully performed (and such finding must be in harmony with the pleadings as modified by the evidence without objection) must relate to the 21st day of August or the 1st of September, and that a finding that the plaintiffs were paid for this same class of work, at the same rates as fixed by the contract, for the months of September and October, negatives the finding that the contract was performed at the time alleged and (we may assume) supported by some evidence. If the contract was not performed at the date fixed by the plaintiff, and was not substantially completed until the 26th day of October, when the work was concededly suspended, then the findings of the referee are not in harmony with the pleadings or the proofs, and the rule still prevails that "judgment should be rendered in conformity with the allegations and proofs of the parties, secundum allegata et probata." Wright v. Delafield, 25 N. Y. 266, 268. Here the plaintiff, under an allegation that the contract was performed on the 21st day of August, has been permitted to recover for work performed subsequent to that time under the terms of the contract alleged to have been fully performed, while claiming for such work under an oral contract upon different terms. We think this is not warranted, and that the learned referee erred in his findings and in his conclusions of law in reference to the first and second causes of action.

The third cause of action realleges the formal parts of the first cause of action, and avers that on the 17th day of September, 1906, the parties entered into a written contract for the elimination of a grade crossing at Winsted, Conn., under substantially the same terms and conditions of the contract hereinbefore referred to, and that—

"said contract further provided that on or about the 1st day of each month during the progress of the work an estimate should be made by the engineer of the defendant of the value of the part of the work done up to such time, and upon his certificate of the amount being presented to the proper official of the defendant the amount of said estimate, less a retained 10 per cent., and less previous payments, should be paid to the plaintiffs on the 20th of each month for the work done the previous month; that between September 17, 1906, and November 1, 1907, pursuant to said contract, plaintiffs performed work and furnished materials thereunder as provided in said contract of the agreed value of $20,133.99, and fully performed all the agreements of said contract on their part to be performed during said time; that no part thereof has been paid, except the sum of $13,655.37."

The fourth cause of action is for extra labor and materials furnished under this contract to the extent of $254.17; and the fifth cause of action is of the same general character, for changes in the work as it progressed, amounting to $1,200, on which $480 has been paid.  The sixth and seventh causes of action are not involved, and the eighth cause of action realleges the formal part of the first cause of action and the second paragraph of the third cause of action, relating to the making of the contract for the Winsted work, and avers that—

"said defendant, through its engineer, officers, and agents, made and rendered to the plaintiffs false and fraudulent estimates of the amount of work performed by plaintiffs during each month from September 19, 1906, to November 1, 1907, and by reason thereof held back a large part of the amount due plaintiffs each month during said term, and by reason thereof failed to perform their part of said contract by furnishing the estimates and making the payments therein agreed to be made under said contract, and in consequence of the failure of defendant to perform its contract as aforesaid, and because of such false and fraudulent statements and estimates, and the withholding of the moneys due plaintiffs by defendant, and for that reason only, plaintiffs were obliged to discontinue work on said contract on or about November 1, 1907;" that by reason thereof plaintiffs were damaged in the sum of $7,257.50, and that no part thereof has been paid.

There is no dispute that the plaintiffs' creditors placed attachments upon their plant, tools, etc., on the 26th day of October, 1907, and that the plaintiffs discontinued work immediately, and that subsequently the plaintiffs in a written memorandum consented that the defendant should relet the contract to other contractors, and that these contractors, using the plaintiffs' plant and materials, under an agreement with the defendant, subsequently completed the work.  The defendant has counterclaimed for the amount which it cost to complete the work, over and above the contract price with the plaintiffs, and these counterclaims have all been disallowed, on the ground that the defendant was guilty of a fraud which prevented the plaintiffs from performing their contract, and the learned referee has given judgment in favor of the plaintiffs for some of the matters involved in the third, fourth, fifth, and eighth causes of action.

The evidence indicates that the defendant's engineer had from time to time given estimates as the work progressed, and that the plaintiffs had accepted these estimates, and had drawn the money upon them as provided in the contract.  On or about the 11th day of November, 1907, it appears that an assistant engineer, in the absence of the engineer in charge, made up an estimate of the amount of work performed up to the time, and this estimate indicated that the amount which would be due to the plaintiffs on the 20th day of November, 1907, was $4,447.22, and it is by accepting this estimate without questioning, although there is much evidence to indicate that it is most inaccurate, that the alleged fraud is spelled out.  No other fact, so far as we are able to find, is established which would in any manner tend to show that the defendant has been guilty of any fraud in the premises.  The contract, it will be remembered, provided for payment upon the basis of the unit of square yards of excavation and construction

of concrete work, with some other units of lesser importance, and it was provided that the defendant's engineer should, on or about the 1st of each month, make an estimate of "the value of the part of the work done up to such time," which should form the basis of the payment to be made on the 20th of the month.

[3] The contract did not undertake to guarantee that the defendant's engineer would make an absolutely accurate calculation as to the amount of work done at the time of making up the statement. The parties mutually agreed that the engineer would make up an estimate of the value of the work performed, and, in the absence of bad faith upon the part of the engineer, such estimate furnished the only basis of partial payments during the progress of the work. It is not questioned that the engineer did make these monthly estimates. It is conceded that such estimates were made, and that the plaintiffs accepted these estimates and were paid the amounts shown to be due under the terms of the contract up to the month in which they abandoned the work, and unless there is evidence in this case to show bad faith on the part of the engineer there is no foundation for the plaintiffs' recovery, no ground for throwing out the defendant's counterclaim. There is absolutely no evidence, so far as we are able to discover, of any act on the part of the defendant's engineer from which the inference can be drawn that he acted in bad faith in the matter.

The contract is plain and unambiguous; the basis of calculation simple. The labor and materials entering into the work were to be paid for on the basis of the number of cubic yards of excavation made and concrete construction put in. The work was being performed by the plaintiffs, competent contractors, we may assume, entirely capable either of actually measuring the work accomplished, or of making an estimate of the quantity. They had access to every fact and figure which could have been known to the defendant or its engineer, and, so far as appears, they accepted the estimates as made by him from month to month without any complaint, without suggestion that they were less than the work actually accomplished. There is no evidence that the defendant or its engineer took any steps looking toward the deceiving of the plaintiffs. The defendant did not deny the plaintiffs access to the work for the purpose of making their own estimates, or of measuring up the work, and no fact is pointed out to indicate that the defendant's engineer ever did or said anything tending to obscure the facts to the plaintiffs, and the evidence is quite as consistent with the theory that the defendant's engineer had, previous to November, overestimated the amount of work done, thus permitting the plaintiffs up to that time to collect more than they were entitled to, as that the estimate of November was right, and all the others wrong.

[4] But we are going to assume, for the purposes of this discussion, that the November estimate was right, and that the previous estimates were wrong, in their statement of the number of yards of material removed and the number of yards of concrete put in, for this is the most favorable view to the plaintiffs; and we then hold that the evidence does not show a fraudulent breach of the contract on the part of the defendant. The language of the contract is not that the

engineer shall furnish a statement of the amount of excavation or of the concrete work performed, or of the materials used, but that "during the progress of the work an estimate should be made by the engineer of the defendant of the value of the part of the work done up to such time," which is quite another thing. The "value of the part of the work done" is not necessarily the contract price of a fixed number of cubic yards of earth removed, or of a definite number of yards of concrete actually in place. The value of the part of the work done is its value in relation to all the surrounding conditions—is the value of that part of the work accomplished which would result to the defendant if the plaintiffs should stop work at that particular moment, and this would depend upon many things entirely apart from the mere cubic yards of material removed or placed. It is to be noted that the contract does not relate to the volume of materials removed or placed, in so far as the question now before us is concerned, but to the "value of the part of the work done"; and this value is to be estimated, not by measuring the materials, but by the defendant's engineer.

[5] The contract clearly contemplates that the defendant is to have the benefit of the judgment of its engineer as to the value of the work done, which depends upon the quality of the workmanship as well as the quantity of materials removed or in place, and it was upon his estimate of the value of the work done that the partial payments were to be made, and the fact that he may have made a statement of his estimate of the quantity of the work done in arriving at his conclusions, or that some one else found the quantities different, is not sufficient to sustain the burden of proving fraud. To estimate is defined by Webster to be to—

"form an opinion of, as to amount, number, etc., from imperfect data, comparison, or experience; to make an estimate of; to calculate roughly; to rate; as, to estimate the cost of a trip, the number of feet in a piece of land."

Again the same authority says:

"The noun 'estimate,' like its verb, supposes chiefly an exercise of judgment in determining the amount, importance, or magnitude of things, with their other exterior relations; as, an estimate of expenses incurred."

Suppose the defendant's engineer, in the exercise of his judgment in estimating the value of the part of the work done from month to month, did fix that value at less than it would be if calculated upon the exact amount of materials removed or placed; is there any fraud in that, of itself? Was it not within the discretion vested in him by the contract by its language and its spirit? That was the condition on which the defendant agreed to make payments. It was the condition on which the plaintiffs agreed to perform the whole work, and unless the evidence is sufficient to show that the defendant's engineer, in making these estimates of the value of the work performed from month to month, was actuated by bad faith, the plaintiffs have failed to establish the eighth cause of action.

Ordinarily, a party employed to perform a given piece of work is not paid until the work is completed. The contract price is based on the value to the owner of the premises on which the work is to be

done of the completed contract. He is willing to pay a given sum, either in lump or to be determined upon the materials in place, for the completed work, and if he consents to pay as the work progresses, such payments are based upon the value of the work as it stands at the time of payments, and not upon the unit price of such materials as may have been placed at any particular time. This is what this particular contract expressly provided for, yet the learned referee has found that the defendant is guilty of fraud, because its engineer's estimate for certain months is not equal to the unit cost of the materials in place at these times, as shown by another estimate, which is assumed to be correct, in spite of the fact that there is much evidence in the case pointing to the contrary.

[6] Assuming, however, that the proper basis is the units agreed upon as the basis for the ultimate price to be paid for the work, the mere fact of an error in the estimate would not constitute any part of a fraud. The error must have been the result of design, not a mere error in judgment, and the case is absolutely barren of such evidence. So far as the evidence discloses, the defendant acted in good faith throughout the transaction, and if the engineer made a mistake in his estimate of the value of the work done at particular times, it was one of the risks which the plaintiffs took in entering into the contract. If they had wanted to be paid for all the work performed at the unit prices as the work progressed, they should have so stipulated in their contract. This would have presented a case where any engineer could have measured up the work, and no reliance upon estimates would have been necessary. But no such contract was made, and the plaintiffs have no right to place the burden upon the defendant, who has simply performed its contract.

The whole judgment appears to be based largely upon the erroneous theory that the defendant has been guilty of fraud, and as there is no evidence from which fraud can properly be found, the judgment does not rest upon a secure foundation, and should not be permitted to stand.

The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the final award of costs. All concur.