### STATE vs. HUGH SMITH.

### York, 1875.—February 26, 1876.

#### Indictment. Manslaughter. Trial.

Upon an indictment for manslaughter committed upon the prisoner's wife, a count which alleges the relation which the prisoner sustained to the deceased, his duty to provide for her necessities, her own incapacity and his ability to do it, and that he did "feloniously and willfully neglect and refuse to provide necessary clothing, shelter and protection from the cold and inclemency of the weather" for a certain number of days during winter, and the consequent sickness and death of the wife, and manslaughter by the defendant "in the manner and by the means aforesaid," is sufficient without other or more precise or formal allegations of evil or wrongful intent on the part of the defendant, or of his knowledge of the effect which his negligence was producing.

A count charging the defendant with manslaughter in the form prescribed in R. S., c. 134, § 7, is sufficient.

Upon a charge of manslaughter arising from a negligent omission of a known duty, it is not necessary to allege or prove a criminal intent on the part of the defendant.

A party cannot sustain exceptions to the judge's refusal to instruct the jury according to his requests, although such requests may contain abstract propositions which are legally correct, unless it appears that there was evidence in the case which made such instructions pertinent and appropriate, nor to the judge's refusal to adopt the form of stating a legal proposition desired by the party when he has given the law arising upon the evidence fully and correctly.

It is not in contravention of c. 212, Laws of 1874, to call the attention of the
jury to important pieces of testimony nor to put questions to the jury sug-
gested by the evidence, and which it is desirable that the jury should con-
sider in coming to a conclusion upon the case committed to them.

ON EXCEPTIONS.

INDICTMENT for manslaughter against the defendant for causing
the death of his insane wife by negligently exposing her to the
inclemency of the weather, insufficiently clad and in a room not
sufficiently warmed, from January 18 to February 9, 1875.

The crime is set out in the indictment as follows:

FIRST COUNT. "The jurors for said state upon their oath present,
that Hugh Smith, of Buxton, in the said county of York, laborer,
on the nineteenth day of January, in the year of our Lord one
thousand eight hundred and seventy-five; at Buxton, in said
county of York, being then and there the husband of one Lucy A.
Smith, his wife, and being then and there under the legal duty to
provide for his said wife necessary clothing, shelter, and protec-
tion from the frost, cold and inclemency of the weather, and then
and there having the means to provide the same, and she, said
Lucy A. Smith, being then and there weak, feeble, destitute
and infirm, and unable to go abroad, did then and there feloni-
ously and willfully neglect and refuse to provide necessary cloth-
ing, shelter and protection from the frost, cold and inclemency of
the weather for his said wife, whereby her health was greatly
injured; and he the said Hugh Smith, afterward, to wit, on the
next succeeding day and on every day between the said nine-
teenth day of January aforesaid and the ninth day of February
then next ensuing, did there feloniously and willfully continue to
neglect and refuse to provide her, the said Lucy A. Smith, with
necessary clothing, shelter and protection from the frost, cold
and inclemency of the weather, the said Hugh Smith being there
on all said days and times her husband as aforesaid, and having
the means to provide the same as aforesaid, and under the legal
duty to provide the same as aforesaid, and she, the said Lucy A.
Smith, having no means to provide the same as aforesaid, and
being weak, feeble, destitute, infirm and unable to go abroad as
aforesaid. By reason whereof the said Lucy A. Smith there on
all the days and times before mentioned, until the fifth day of

May, in the year aforesaid, sickened and languished with a mortal sickness and feebleness of body so as aforesaid created and produced by the said Hugh Smith, until the fifth day of May now last past, on which said last mentioned day at said Buxton, she the said Lucy A. Smith, there of said mortal sickness and feebleness of body, died. And so the jurors aforesaid, upon their oath aforesaid, do say, that the said Hugh Smith, her, the said Lucy A. Smith, in manner and by the means aforesaid, feloniously did kill and slay, against the peace of said state and contrary to the form of the statute in such case made and provided."

[ The second count, the verdict upon it being not guilty, is here omitted.]

THIRD COUNT. "And the jurors for said state upon their oath do further present, that Hugh Smith of Buxton, in said county of York, laborer, on the fifth day of May, in the year of our Lord one thousand eight hundred and seventy-five, at Buxton, in said county of York, one Lucy A. Smith, in the peace of the state then and there, being, feloniously did kill and slay against the peace of said state and contrary to the form of the statute in such case made and provided."

By order of the court the jury viewed the place where she was confined by the defendant.

The defendant contended that if his wife suffered from the causes alleged, it was without his knowledge, and that he never intended she should suffer from cold, and there was evidence from him which he claimed supported the defense; but in his evidence he admitted that he knew the condition of the room; that he passed through it every night but one from January 19th to February 9th, to fasten the doors, before going to bed, that he had warmed the room by a stove every winter before when she had been kept there, and intended to do so last winter, but not having the money on hand to buy one, had put it off from time to time, and that the only examination he made of the condition of his wife when in the room was to look and see if the canvas was over her.

Upon this point the defendant asked to have the jury instructed.

I. That "there are different degrees of negligence. Many acts

of blamable negligence, for which one would be liable to a civil action, will not support an indictment for injury (or death even) resulting from such negligence."

II. That "it is not every degree of carelessness or negligence, upon which death ensues, that will render the negligent person liable for manslaughter."

III. "Whether or not the accused is guilty of such acts and intent as to make him criminally liable to conviction of manslaughter therefor is purely a question for the jury."

These instructions were not given as requested, but the judge did say as follows:

"That if Lucy A. Smith was the lawful wife of the prisoner at the time alleged in the indictment, he was charged by law with the duty of rendering her proper support; that if, knowing that duty, he negligently omitted to perform it, having the ability to do so, said Lucy A. Smith being insane and unable to provide for herself, and she died, or her death was hastened or accelerated by reason of such omission, that he is guilty of the crime of manslaughter. This proposition I give you as covering the whole law applicable to the crime charged in the indictment. The first element is one of fact, whether the deceased was the lawful wife of the prisoner. The next is one of law; that is, if she was the lawful wife, the law charges him with the duty of rendering her support, proper support under all the circumstances of the case. The next is one of fact, the knowledge of the duty on his part.

The next element is one of fact, the omission of his duty in that respect, negligent omission.

And the next is one of fact, whether the deceased was in a condition to be incapable of providing for herself at the time of the omission.

The next element is one of fact, whether she died, or her death was hastened or accelerated by reason of the omission on the part of the prisoner.

Now, gentlemen, you will observe, if you have carefully listened to the elements of law I have given you, that the element of intent on the part of the prisoner is omitted. I charge you that to constitute the crime charged in this case, it is not essential to prove

criminal intent on the part of the prisoner. If the criminal intent was proved, the crime would not be manslaughter but murder, a higher grade of crime. So far as it was his duty to provide support, if you are satisfied in this case there was a negligent omission to perform his duty, a negligent omission, then the defendant is liable."

The defendant's counsel requested these instructions upon the question of intent, viz:

I. "The intent of the accused in the acts and omissions charged against him is an essential fact for the jury, to be proved (like any other fact) beyond a reasonable doubt."

II. "If the evidence can be reconciled with an innocent intent upon the part of the accused, he must be acquitted."

III. "There is only one criterion by which the guilt of men is to be tested. It is whether the mind is criminal."

IV. "The essence of an offense is the wrongful intent; without this it cannot exist."

V. "Let the result of an action or omission be what it may, a man can be held guilty only upon the ground of intention."

VI. "The allegation in the indictment that the offense charged was done 'willfully' is material, and to be proved beyond a reasonable doubt."

VII. "Willfully," in law, means "with a bad purpose."

VIII. "Before a conviction can be had, there must be a criminal intent, willful wrong done. There must be proof to the full satisfaction of the jury of a wrong intent."

The defendant also requested the following instructions :

"That there is a difference between the negligent doing of an act and the careless omission to perform one's duty; the negligence in the former case being greater in degree."

"That in order to justify the inference of legal guilt, the existence of the inculpatory facts must be absolutely incompatable with the innocence of the accused, and incapable of explanation upon any other reasonable hypothesis than that of his guilt.".

"That the jury must consider whether the circumstances proved necessarily involve the guilt of the prisoner, or only probably so; and when the evidence merely establishes some finite probability

in favor of one hypothesis rather than another, such evidence cannot amount to proof of guilt however great that probability may be." These instrictions the presiding justice declined to give.

The defendant also asked to have the jury told that mere carelessness is not necessarily criminal. Carelessness is not sufficient to convict without proof beyond reasonable doubt of intentional neglect.

Instead of giving this instruction the judge instructed the jury as hereinbefore stated. But he fully instructed the jury as to the burden of proof and the degree of proof necessary to establish every fact required to prove the guilt of the prisoner not excepted to by him.

The judge further instructed the jury "that if Mrs. Smith was the wife of the defendant the law charges him with the duty of rendering her proper support as long as he is able to do so, the husband being charged with the duty to support, if she was in such a condition of body or mind as to be incapable of caring for herself. If he had not himself means to render her support I instruct you, as matter of law, that it was his duty to apply to the proper authorities, whose duty it would be to render her support, to the overseers of the poor of the town charged with the duty to support his wife in a helpless condition ; if he has not got the means to render that support he cannot be permitted to stand by and see her perish for want of proper support." "It would be a violation of his duty if he permitted her to be exposed in such a way as naturally and ordinarily would injure her health or endanger her life." (The evidence, disclosing the fact that she had once to his knowledge been supported in the Insane Hospital by the town where he lived.)

The judge then stated that the care to be exercised by the person bound to furnish support depended on the condition and capacity of the person to be supported and upon the circumstances of each case; and further instructed the jury as to the duty of the defendant in this respect, not excepted to.

He further remarked, "the defendant comes upon the stand to exculpate himself from any imputation cast upon him of neglect of duty. You will consider the weather, taking his statement as

he gave it; consider the condition of his wife; the place where she was left; her liability to be naked at any time from her violent condition; whether he himself, from his own statement, has satisfied you that he was in the discharge of the duty which he owed her. Why gentlemen, what could have called the attention of that husband after passing through that room in the cold nights of January and February, from his wife, when he himself retired to his bed, knowing the bitter, biting cold in that room, the howling blast without, when that woman, to whom he stood in the dearest relation known to man, was in that room, situated as she was, what could have called his mind from her condition ? ''

Referring to the testimony of the defendant that he passed through this room night and morning, and looked to see if his wife was covered up, the judge had remarked that he did not remember that the prisoner said that he had ever looked to see what her condition was, or that he spoke to her during the twenty-two days from the 19th of January to the 9th of February, A. D. 1875. He now recurred to that, saying: "if he was attentive to her, caring for her, would not you expect, this is for you to consider, gentlemen, would you not expect that the husband, charged with the duty to render support to such a wife, would have seen to her, night and day, examined to see what condition she was in ? Would you not expect him to know if she was freezing from exposure in that place ; if properly cared for that some inmate of that house, the husband or the attendant would know that she was kept in a clean, healthy condition; would have known the condition of her feet and hips before the 9th of February, when that condition, so far as the evidence discloses, was first discovered ? ''

The defendant claims that the two paragraphs from the charge last above quoted was a comment upon the testimony, and in contravention of the Public Laws of 1874, c. 212.

The only reference made to the charge contained in the last count of the indictment was this : in his charge to the jury the judge said:

"The third count is a general count, setting out the crime gen-

erally, without any specification of the means by which it was committed. That count is drawn under the statute of this state which authorizes an indictment to be drawn in that manner.

The proof of the crime in any manner known to the law is sufficient to support a verdict under that count."

A verdict of guilty was rendered upon the first and third counts and of not guilty upon the second count, the verdicts being separately taken and rendered.

The defendant moved in arrest of judgment upon the verdicts on the first and third counts, because

I. The first count does not contain any allegation that the condition of the defendant's wife, her necessities, and the facts in said first count alleged were known to the defendant.

II. Because the said third count contains no allegations of negligence, nor of the manner and means by which the deceased came to her death, nor of any intent to commit an offense on the part of the accused, nor any facts, nor his knowledge of the facts, which were to be proved against him.

III. Because said third count does not state "the nature and cause of the accusation" against the accused, is insufficient to sustain the verdict, and any judgment thereon against the prisoner; and is not according to the requirements of the constitution; and any statute assuming to authorize such a count is unconstitutional.

To the foregoing rulings, instructions, refusals to instruct and remarks, and to the overruling of his motion in arrest of judgment, the defendant excepted.

*E. B. Smith*, for the defendant.

*W. S. Lunt*, county attorney, for the state.

BARROWS, J. Having been found guilty upon the first and third counts of an indictment in which he is charged with manslaughter the defendant moves in arrest of judgment, and excepts to the overruling of his motion, as well as to certain instructions given to the jury and certain refusals to instruct in conformity with his requests.

The crime was alleged to have been committed against the person of his wife, and the evidence for the state tended to show that his wife was insane and had been for some years, at times, so as

to tear all the clothing from her person, that she became a cripple, able to move herself by her hands only; that in this condition she was confined in a very cold open room in the·ell part of the prisoner's house day and night without fire, with no garment on her, nothing to sleep on but husks and rags in a filthy condition, and no covering but a piece of canvas from the 18th of January to the 9th of February, 1875; that there was a broken pane of glass in one of the windows, permitted to remain open; that when found by the neighbors her feet and hips were badly frozen, swollen and discolored; that gangrene had already commenced, followed by mortification and death caused by freezing; that the prisoner had full knowledge of her condition and of the condition of the room and was able to support her in a proper manner. The medical men who examined her on the 10th and 11th of February, testified that in their opinion the freezing must have occurred three or four weeks previous.

Now, while the defendant contended that if his wife suffered from the causes alleged, it was without his knowledge and contrary to his intention and gave evidence which he claimed supported this position, he admitted upon the stand that he knew the condition of the room; that he passed through it every night but one, from January 19th to February 9th to fasten the doors; that every winter before, when she had been kept there, he had warmed the room by a stove and intended to do so last winter, but not having the money on hand, put it off, and the only examination which he made of the condition of his wife, when in the room, was to look and see if the canvas was over her.

We will consider first the questions raised as to the sufficiency of the indictment.

The defendant objects to the first count, because he says it contains no allegation that the condition of his wife, her necessities, and the facts alleged in that count as constituting the crime of manslaughter were known to him.

The count alleges the relation which he sustained to the deceased, his duty to provide for her necessities, her own incapacity and his ability to do it, and that he did "feloniously and willfully

neglect and refuse to provide necessary clothing, shelter and protection from the cold and inclemency of the weather" for her from the 19th day of January to the 9th day of February, the consequent sickness and death of the wife, and manslaughter by the defendant "in the manner and by the means aforesaid."

The objection is not sustained. The allegation of a willful and felonious neglect and refusal to perform the duties devolved upon him by law in the premises of itself imports an allegation that he knew the necessities of his wife and the essential facts alleged in the count.

A man cannot be said in any manner to neglect or refuse to perform a duty unless he has knowledge of the condition of things which requires performance at his hands.

The charge of neglect and refusal to furnish the necessary protection against the cold is tantamount to an averment that the defendant had all the knowledge of the facts which it was necessary that he should have, in order to inculpate him. It was not necessary to allege nor to prove that the defendant knew from day to day the effect which his brutal neglect was producing. If such knowledge could have been brought home to him he should have been charged not with manslaughter, but with murder; and it is not easy to see how he could have avoided the inference of malicious intent.

We hold the first count to be sufficient, even under the former practice requiring that the manner and means by which the crime was accomplished should be set forth in detail.

But such allegations are now unnecessary under the provisions of R. S., c. 134, § 7.

The defendant's objections to the third count are futile. Similar objections were made and overruled in *State* v. *Verrill*, 54 Maine, 408.

Nor do we see that the defendant has any good cause of complaint when we examine the instructions and the refusals to instruct as requested. One extended series of requests called for instructions upon the question of the prisoner's intent, maintaining that, "if the evidence can be reconciled with an innocent intent on the part of the prisoner he must be acquitted;" that a wrongful

intent was of the essence of the offense without which it could not exist; that, whatever the result of an action or omission, a man can be held guilty only upon the ground of evil intentions; that there must be proof to the satisfaction of the jury of a wrong intent, of a willful wrong done.

The presiding judge refused these requests and instructed the jury that it was not essential to prove criminal intent in order to constitute the crime charged in this case. This was clearly right.

A criminal intent on the part of a party who has carelessly caused the death of a human being need not be alleged nor proved in order to constitute manslaughter when such death was the result of the neglect of a known duty to the deceased.

Add to the matters charged in this indictment the element of an evil and wicked intent and you have the malice, express or implied, which would make the crime murder, either of the first or second degree according to the character of the intent.

It is settled beyond a question that the naked negligent omission of a known duty, when it causes or hastens the death of a human being, constitutes manslaughter. Hence, Maule, J., in *Regina* v. *Haines*, 2 C. & K., 368, charged the jury in these words: "If you are satisfied that it was the ordinary and plain duty of the prisoner to have caused an air-heading to be made in this mine, and that a man using reasonable diligence would have had it done, and that, by the omission, the death of the deceased occurred, you ought to find the prisoner guilty of manslaughter."

For further illustration of the doctrine that manslaughter may be committed by a negligent omission of duty see *Reg.* v. *Marriott*, 8 Car. & P., 425. *Reg.* v. *Edwards*, id., 611. *Reg.* v. *Lowe*, 4 Cox C. C., 449. *Reg.* v. *Plummer*, 1 Car. & K., 600. *Nixon* v. *People*, 2 Scammon, 269.

Another series of requested instructions embody certain general propositions as to degrees of negligence, among others that mere carelessness is not necessarily criminal; that carelessness is not sufficient to convict without proof beyond reasonable doubt of intentional neglect; that there is a difference between the negligent doing of an act and the careless omission to perform one's duty; the negligence in the former case being greater in degree;

that many acts of blamable negligence for which one would be liable in a civil action, will not support an indictment for injury or death resulting from such negligence ; that it is not every degree of carelessness or negligence upon which death ensues, that will render the negligent person liable for manslaughter ; that whether or not the accused is guilty of such acts and intent as to make him criminally liable to conviction of manslaughter, therefor, is purely a question for the jury.

The requested instructions were refused; but the jury were fully instructed as to the facts which it was necessary for them to find before they could pronounce the defendant guilty, and upon the law applicable to the facts.

One obvious reason for refusing the requests was that upon the defendant's own version of the facts the requests were not pertinent to the condition of things developed, and could only have tended to mystify it, and mislead the jury.

The negligence of the defendant was of the grossest and most culpable kind, regarding only the facts which he himself admitted to be true.

The defendant further requested the judge to instruct the jury "that in order to justify the inference of legal guilt, the existence of the inculpatory facts must be absolutely incompatible with the innocence of the accused and incapable of explanation upon any other reasonable hypothesis than that of his guilt; that the jury must consider whether the circumstances proved necessarily involve the guilt of the prisoner or only probably so; and when the evidence merely establishes some finite probability in favor of one hypothesis rather than another, such evidence cannot amount to proof of guilt however great that probability may be."

The judge did not give these instructions in this form; but the exceptions state that he did "fully instruct the jury as to the burden of proof and the degree of proof necessary to establish every fact required to prove the guilt of the prisoner," in a manner to which no exception is taken.

The reason last mentioned for the refusal of other instructions applies also to these. There was no occasion for them. It is quite possible to conceive of cases where they might be pertinent

and proper ; but there was nothing in the questions upon which the jury had to pass in this case that made them so here.

There is another reason. When a judge has once given the law arising upon the evidence fully and correctly, he is under no obligation to repeat the propositions at the request of a party in such form as the whim or shrewdness of counsel may suggest as likely to produce an impression favorable to his side of the case. A refusal to do this is matter of discretion, and not exceptionable. *State* v. *McDonald*, 65 Maine. *State* v. *Pike*, 65 Maine, 111, and cases there cited.

We find recited in the exceptions two paragraphs of the judge's charge, of which the defendant complains as being in contravention of c. 212, Laws of 1874. We do not think they can be so regarded. These paragraphs seem to have been selected as most obnoxious to the charge of being expressions of opinion upon questions of fact arising in the case, of all the utterances of the presiding judge during the progress of the trial. They call the attention of the jury to testimony coming partly from the defendant himself, having an important bearing upon the questions upon which the jury were to pass, and consist mainly of interrogatories addressed to the jury, which it behooved them to consider and answer in coming to a conclusion upon the main question.

Considering the cold blooded and cruel recklessness of which the defendant upon his own showing was guilty, we think the judge must have refrained with praiseworthy precision from saying anything that could be deemed incompatible with the statute referred to. *Exceptions overruled.*

APPLETON, C. J., WALTON, DANFORTH, VIRGIN and PETERS, JJ., concurred.