COMMONWEALTH *vs.* JOSEPH W. ROSS.

Suffolk.		May 4, 1959. — June 18, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, &
WHITTEMORE, JJ.

*Robbery. Practice, Criminal,* Charge to jury; Exceptions: whether error
harmful. *Error,* Whether error harmful.

Conviction of a defendant upon an indictment for robbery of money from
a bank, tried with an indictment against him for knowingly receiving
stolen money, was warranted by evidence that the defendant five days
after the robbery had possession of some of the stolen money and did
not so explain his possession thereof to police that his claim of having
acquired it innocently could be checked, that he gave inconsistent ac-
counts of events at material times, that he admitted he could "supply
all the necessary details of the bank robbery" and could "give the
whole story," and that he did not directly deny participation in the
bank robbery when charged with it, even if some testimony made an
inference that the defendant knowingly received the stolen money more
probable than an inference that he participated in the robbery. [430–
431]

At the trial together of an indictment for robbery of money from a bank
and an indictment against the same defendant for knowingly receiv-
ing stolen money, at which there was uncontroverted evidence that
the defendant had possession of some of the stolen money five days
after the robbery, a portion of the trial judge's charge to the jury that
"if you draw the inference that . . . [the defendant] knew the facts
[of the robbery], it is permissible to draw the inference that he had
that money knowing it to have been stolen; and, of course, it is per-
missible to draw the inference that he partook in the robbery," read
with the rest of the charge and as applied to all the evidence, did not
improperly permit the jury to convict the defendant upon the indict-
ment for robbery on a speculative conclusion nor show error
prejudicial to the defendant. [432–434]

Error at the trial of an indictment for robbery in the admission on re-
direct examination of irrelevant testimony of a police officer, not ob-
jected or excepted to, that "there was no doubt in his mind, at the time
he was questioning the defendant, that the defendant was a participant
in the robbery," was not shown by the record to have been so preju-
dicial to the defendant that his conviction on the indictment ought
not to stand. [435–436]

INDICTMENT, found and returned on October 3, 1956.

The case was tried in the Superior Court before *Donahue,* J.

*James D. St. Clair, (Blair L. Perry* with him,) for the defendant.

*Angelo Morello,* Assistant District Attorney, for the Commonwealth.

WHITTEMORE, J.   The defendant was tried under two indictments, one for armed and masked robbery on September 17, 1956, and the other for knowingly receiving stolen money on that date.   The jury found the defendant guilty of robbery and not guilty of receiving.   The defendant's exceptions are stated in the opinion.

The evidence permitted the jury to find as follows:   On September 17, 1956, at about 1 P.M. three armed and masked men stole $9,468.06 from a banking office in Boston.   On September 22, a police officer with F. B. I. agents questioned the defendant at his home in the Roslindale section of Boston, and, behind a sliding door in the headboard of the defendant's bed, found $246 in bills, including twenty-three two dollar bills, seven of which had been included in a decoy package which had been handed to the robbers by the tellers.

The defendant, according to police testimony, told inconsistent stories to account for the money; it was his, part of it belonged to his wife's cousin, it was his; he had not worked for six years and he obtained his money in gambling; he would not say where or from whom.   He told conflicting stories of his meetings with one Goss whom the police told him they suspected of involvement along with the defendant and one Matheson; he first said he had not seen Goss for six months; later, that he last saw him on September 15; later, that Goss left his home on September 18; that Goss had no visitors; later, that Matheson and one Joyce called on Goss on several occasions including the Wednesday prior to the bank robbery.   The defendant said he would tell everything if they would allow his wife to leave the police station.   When she had left, he said he had told more than he should have and would not say more.   He said that on the evening of September 17, Goss gave the defendant $100 in five and twenty dollar bills and gave one dollar bills to each of the defendant's children.   When pressed for the facts of

the robbery he asked whether he would have to testify "if he could tell them the facts of the case and give them the answer to the bank robbery." He said that "he could supply all the necessary details of the bank robbery but would think it over." The defendant did not at any time admit participation in the robbery. He "never denied participation in the bank robbery" but upon being asked had said he was "incapable of bank robbery." The witness had previously testified that the defendant on September 22 had denied participation. F. B. I. agent Rico testified that he told the defendant that they would not be sitting there if they did not believe that the defendant was a participant in the robbery and that the investigation of the robbery indicated that he was a participant. Agent Rico testified that he asked the defendant to give the whole story, and the defendant stated that he had already "said too much and was not going to say anything more." The defendant also said: Goss left on September 18 saying he was leaving because things were getting a "little too hot"; the defendant changed the ten and twenty dollar bills he had from Goss into one and five dollar bills; he did not like the two dollar bills, and "if he got them in a game his purpose in the game would be to immediately get rid of them because they were considered . . . bad luck"; he could "give the whole story to the extent that he would not have to testify"; he was already "in the bag" and could not hurt himself any more.

One Cuddy, who lived in the house, and the defendant's wife testified that the defendant was at home on September 17 until about 2 or 2:30 P.M.

A teller, an eye witness, testified that the defendant's height, build, weight and eyes were similar to those of the robber who stood in front of his cage on September 17, but that he could not identify the defendant as the robber.

The defendant did not testify.

1. The defendant excepted to the denial of a motion for a directed verdict of not guilty of robbery and contends that the circumstantial evidence left it conjectural whether the defendant stole or received. We disagree.

In cases where the evidence is circumstantial and recent possession is relied on, several inferences are possible. See *Commonwealth* v. *Kelley*, 333 Mass. 191, 195. If the inferences of theft and receiving are equally probable the issue is conjectural. See *Commonwealth* v. *O'Brien*, 305 Mass. 393, 401–403; *Commonwealth* v. *Shea*, 324 Mass. 710, 713; *People* v. *Galbo*, 218 N. Y. 283, 291–294 ("Sometimes the circumstances may make it proper for a jury to say which inference is the true one").

The defendant asserts that while the testimony of his denial of guilt of robbery permitted the inference that he was a receiver (*Commonwealth* v. *Kelley*, 333 Mass. 191, 195) disbelief of this denial left the proper inference speculative on the other testimony. The difficulty with this contention is that it is predicated, as we view it, on an acceptance of all the testimony, or certain parts of it. There was indeed testimony which if believed made the inference of receiving the more probable. See *Regina* v. *Collier*, 4 Jur. 703. But the jury could believe or disbelieve part or all of the testimony. There was certainly testimony which if believed warranted the inference of robbery. It was uncontroverted that the defendant was in recent possession of stolen money. The jury could have found that he gave inconsistent accounts of events at critical times, did not so explain his possession of the stolen two dollar bills that his claim of innocent acquisition could be checked, admitted that he could supply all the necessary details of the bank robbery and could give the whole story if he would not have to testify, and did not directly deny participation when charged with it. That this is sufficient to support a finding of guilty of robbery is well established. *Commonwealth* v. *Montgomery*, 11 Met. 534, 537. *Commonwealth* v. *Parmenter*, 101 Mass. 211. *Commonwealth* v. *McGorty*, 114 Mass. 299, 302. *Commonwealth* v. *Taylor*, 210 Mass. 443. *Commonwealth* v. *Salah*, 253 Mass. 549, 551. *Commonwealth* v. *O'Hare*, 254 Mass. 564, 565. *Commonwealth* v. *Grace*, 265 Mass. 119, 123–124. *Commonwealth* v. *Kelley*, 333 Mass. 191, 193–194. *Commonwealth* v. *Torrealba*, 316 Mass. 24, 29. *McNamara*

v. *Henkel,* 226 U. S. 520, 524–525. *Boston & Worcester R.R.* v. *Dana,* 1 Gray, 83, 102–103 (unexplained possession of money and other property tended to implicate the defendant in the taking and "was competent, not on the ground, as the defendant supposes, of its being proof of possession of stolen property, but upon the broader and more general principle of being a material and relevant fact to the point in issue before the jury"). Wigmore, Evidence (3d ed.) §§ 153, 154. See *Commonwealth* v. *O'Neil,* 169 Mass. 394; *Commonwealth* v. *Devaney,* 182 Mass. 33, 35; *Commonwealth* v. *Tucker,* 189 Mass. 457, 466–467; *Wilkerson* v. *United States,* 41 F. 2d 654, 657 (7th Cir.), cert. den. 282 U. S. 894.

The fact that the two indictments were tried together, thus directing attention to the possible conflicting inferences which are present in the greater number of cases in which recent possession is relied on, did not change the character or extent of the evidence which was probative of either crime. The evidence relevant to either indictment is to be weighed as though the other indictment were absent. See *Regina* v. *Langmead,* 9 Cox C. C. 464, 468.[1] It was formerly a cause of criticism of English practice that, because such charges could not be tried together, and the jury were not free to decide between the inferences, injustice was done in some cases. The statute allowing counts for larceny to be joined with counts for receiving was deemed to cure the fault. Best, Evidence (11th ed.) 203. Wills, Circumstantial Evidence (7th ed.) 103.

2. No prejudicial error in the charge is shown. The judge said in part, "Now, the possession of property which has recently been stolen is evidence that the person in possession was the thief. . . . [The inference to be drawn as between theft and receipt of stolen goods] would depend upon the

---

[1] The defendant was tried and the case submitted on counts for stealing and receiving. The defendant was convicted of receiving and the argument on appeal was that recent possession was evidence of stealing, not of felonious receipt. Byles, J., "[I]t is for the jury to determine . . . ." Blackburn, J., "[I]t depends on the surrounding circumstances whether he is guilty of receiving or stealing." Martin, B., "[I]f the indictment had contained a count for feloniously receiving only, could the chairman have stopped the case from going to the jury? I think clearly not."

explanation he gave . . . . [T]he facts often will permit of more than one inference, and it is a question of which inference you find has been established beyond a reasonable doubt. . . . He can't be found guilty on both indictments. . . . It is for you to say. . . . [I]f you find . . . [the testimony as to conflicting and evasive accounts] to be true, it goes to the credibility of . . . [the defendant and his wife] and Mr. Cuddy and goes to the explanation of the presence of this money in the . . . bedroom, if you find it was there and you find it was part of the stolen money. . . . [N]o inference is to be drawn against a defendant [from his failure to testify]. . . . But you may draw inferences from any statements that you find he made outside of court when he talked to the officers. Did he know that this was stolen money? . . . [W]as he engaged . . . in this robbery? . . . If you are not [so] satisfied . . . you get to the question of whether he was a receiver of stolen money. . . . [D]id he know about it? If he didn't . . . [you may ask yourselves] why did he say to the officers, 'If I could give you the answer to this bank robbery, would I have to testify?' . . . [and] 'What if I could tell you the facts in this case? Are you sure I wouldn't have to testify?' *Well, if you draw the inference that he knew the facts, it is permissible to draw the inference that he had that money knowing it to have been stolen; and, of course, it is permissible to draw the inference that he partook in the robbery*" (emphasis supplied).

The defendant specifies the italicized words as erroneous. We assume, without deciding, that the exception taken at the end of the charge was adequate. What the judge was saying was that if the defendant knew the facts of the robbery, it is reasonable to conclude either that he knew the money was stolen, but did not steal it, or that he was a participant. These were certainly two of the possible inferences from the fact of knowledge, standing alone. It was not necessary for the judge to refer to the less likely inference that someone told the defendant about the robbery. The statement specified is to be read with the rest of the

charge. So read, it says that possession, inconsistent and unverifiable explanations, and words showing knowledge of the crime, warrant an inference of participation and conviction therefor. They do. We do not think that the repetition of the word "inference" invalidated the instruction. The instruction, applied to the evidence, did not permit the jury to convict on a speculative conclusion. More favorably than the evidence required, the judge indicated that the defendant had, if the testimony was believed, only implied that he had knowledge. The testimony, in fact, was that the defendant said unequivocally that he could "supply all the necessary details" and "could give the whole story." If the testimony was believed the conclusion of the defendant's knowledge was based on his express assertion, not on an inference. We think that a reference to the other evidence, of which the judge had already spoken, was to be implied in the statement about guilty knowledge and that its omission in express words at that point in the charge was not prejudicial. The recent possession of stolen money was not controverted. That, and admitted knowledge of the crime, were sufficient to convict. See cases, *supra,* point 1.

3. We think that justice does not require that we consider and act in respect of alleged errors in the admission of testimony of three witnesses as to which no objection was made or exception taken. See *Commonwealth* v. *MacGregor,* 319 Mass. 462, 463; *Commonwealth* v. *Conroy,* 333 Mass. 751, 757. The defendant specifies Agent Rico's testimony of his statement to the defendant that it was believed the defendant was a participant and the request for the "whole story." The bill of exceptions indicates that this statement was followed by the defendant's statement that he had already said too much. There was a sufficient aspect of an admission in the defendant's failure at that point to deny the implied, if not direct, charge of participation, to make it unnecessary for us, in the absence of an exception, to weigh the issue nicely. See *Commonwealth* v. *Spiropoulos,* 208 Mass. 71, 74; *Commonwealth* v. *Sazama, ante,* 154, 157, and cases cited.

The testimony of Agent Brick was of similar aspect. He testified that Rico had said to the defendant they had information which "put him in it more," that the defendant had lied to them and they had further information that the robbery was the defendant's job, that Matheson, Goss and the defendant were involved, that because of the defendant's lies and changed statements they wanted to offer him the chance to set the record straight and that the defendant "had the answer to the bank robbery." According to Brick the defendant said that Agent Rico's story was "pretty good," asked if he would have to testify if he could give the answer, and made some of the other statements above set out which were an assertion of knowledge of the crime, rather than any form of denial of participation.

It is plain, however, that the testimony of Detective Foley, given, we conclude, before Brick testified, was not properly in the case. On cross-examination he testified that upon being asked for the story, the defendant said he had said enough, that while at division 16 the defendant never admitted any connection, that he did not deny participation or connection, that he was not asked specifically and directly whether he had anything to do with the robbery, but he was questioned about his activities on September 17 and gave "four or five stories." On redirect examination Detective Foley testified that "there was no doubt in his mind, at the time he was questioning the defendant, that the defendant was a participant in the robbery . . . ." The fact thus elicited was irrelevant, and the question should not have been put. *Smith* v. *Commonwealth,* 331 Mass. 585, 591. *Commonwealth* v. *Hanley,* 337 Mass. 384, 392. But we do not think the possible prejudice was sufficient to call for the extraordinary action by us which the defendant requests. The jury apart from this testimony knew that the possession of the money and the signs of consciousness of involvement made it inevitable that the police would suspect the defendant. His own false or conflicting and, in significant parts, unverifiable story to the police, if accepted, gave rise to a strong inference that the defendant was guilty of one offence

or the other. The testimony of the two agents that the defendant had been told of the belief in his guilt was, as noted, relevant to a determination of the significance of his replies. It was to a degree only cumulative that Detective Foley shared the belief in the defendant's guilt. There was no objection or exception to bring to the judge's attention the lack of basis for the question. See *Commonwealth* v. *Cabot*, 241 Mass. 131, 151. The trial was fairly conducted and the charge laid the case before the jury in proper aspect on the evidence.

*Exceptions overruled.*