**STATE of Maine**

**v.**

**David McFARLAND.**

Supreme Judicial Court of Maine.

Aug. 25, 1967.

Clinton B. Townsend, County Atty., Skowhegan, Richard S. Cohen, Asst. Atty. Gen., Augusta, for plaintiff.

Burton G. Shiro, Waterville, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

MARDEN, Justice.

On appeal. Upon conviction for breaking, entering and larceny appellant seasonably filed a motion for new trial based upon the usual grounds, with additional reasons as follows:

a) Error in denying appellant's motion for acquittal.

b) Error in permitting cross-examination by the State of a State produced witness.

c) Error in the Court's ruling that a State's witness was a. hostile witness.

d) Error in refusing to give requested instructions to the jury.

e) Erroneous identity of the residence of the appellant, and

f) Error in a statement by the presiding Justice in the presence of the jury that a State witness was a hostile witness.

The motion was denied.

The points of appeal are the same as expressed in the motion for new trial, with additional claim of error in failing to grant that motion.

The evidence offered against the appellant was circumstantial. One B who had entered a plea of guilty to the offense in question and with whom the appellant was acquainted and in whose company, by uncontroverted testimony, appellant had been placed on the night in question, was called as a witness for the State. His replies to questions posed by the County Attorney were equivocal as relating to the part, if any, which the appellant took in the affairs of the evening, out of which arose the ruling of hostility by the Court, and permission of the State to cross-examine. This phase of the trial is made the subject of three points of appeal. A fourth point claims error in the refusal of the Court to dismiss the indictment because of the appellant's being identified therein as of Norridgewock, when in fact he was of Skowhegan. A fifth point alleges error in the denial of the trial court to give requested instructions to the jury.

The remaining points of appeal have to do with the sufficiency of the evidence presented by the State.

A brief statement of the uncontroverted facts will be helpful. Forcible entry was made into and money taken from the Skowhegan Bowl-a-Drome between 7 p. m. of February 24–5 a. m. of February 25, 1966. B and the appellant had been seen in Skowhegan about 6:30 p. m. on February 24th. B and two other male persons were later in Waterville on the evening of February 24th, had procured a taxi to transport them from Waterville to Skowhegan and upon arrival in Skowhegan had fled from the taxi and evaded the fare. The taxi driver filed complaint with the Skowhegan Police, describing his passengers, and about 2:30 a. m. thereafter the appellant and B were observed about ¼ mile from the Bowl-a-Drome, and they sought to flee from the approaching police cruiser. B and the appellant complied with the officer's request to come with him and they were transported from the scene to the police station, at which place the taxi driver identified them as two of the three men he had transported. After leaving the men at the police station, the officer, in returning to the cruiser car, to pick up the third man, found money consisting of bills and coins on the ground by the side of the cruiser from which the men left the car. He returned to the police office and the two men then were arrested for taxi fare evasion.

While B and the accused were being held in the police office, the appellant

sought and received permission to go to the men's room and shortly thereafter rolls of coins in wrappers such as supplied by banks were found in the waste basket in the men's room. There is no evidence that any other person used the men's room during the period that the two men were in the police station. Thereafter both men were taken to the County Jail and as the person of the appellant was searched there, one roll of similarly wrapped coins was found. About 5 a. m. thereafter the forcible entry at the Bowl-a-Drome, was reported at which place the cash register had been broken and currency taken. Coin wrappers at the Bowl-a-Drome were similar to those enclosing the rolled coins found at the police station and on the person of the accused.

There is no contention that the money was identified as that having been taken from the Bowl-a-Drome, and the inference of guilt raised by the possession of *the* stolen goods recognized in State v. Russo, 127 Me. 313, 314, 143 A. 99 (larceny) and State v. Saba et al., 139 Me. 153, 158, 27 A.2d 813 (breaking, entering and larceny) was not applied to the case.

■ The jury was instructed with relation to the money disclosed as follows:

"Money though not identified as part of the property stolen, is still a circumstance proper for your consideration if found in the hands of the defendant subsequent to the larceny for this reason, such evidence may be competent, its effect may be very slight and in many cases furnish not the least ground for charging a party, but the possession of a large sum of money with strong accompanying circumstances of guilt of an independent character accompanied with evidence of entire destitution of money before the time of the larceny may properly be submitted to the jury to be considered with all the evidence in the case."

This instruction substantially was quoted from the holding of Commonwealth v. Montgomery (1846) 11 Metc. (52 Mass.) 534, 537 and followed by Massachusetts as recently as Commonwealth v. Ross (1959) 339 Mass. 428, 159 N.E.2d 330 [3–5], 333. The relevance of such evidence is likewise recognized in United States v. Jackskion (2 CCA 1939) 102 F.2d 683 and Annot. 123 A.L.R. 119. This instruction embodied no error and the long recognized and often repeated rule established in State v. Richards (1893) 85 Me. 252, 254, 27 A. 122, as to the sufficiency of circumstantial evidence was properly translated to the jury. There is no error in the refusal to direct a verdict in favor of the appellant.

■ The point challenging the sufficiency of the indictment because of erroneous identification of the residence of the appellant is without merit. For many years a statute which, at the time of its repeal was 15 M.R.S.A. § 755, specifically provided that the misstatement of the accused's residence was not ground for adjudging the indictment bad, provided such misstatement did not "tend to his prejudice." This statute was repealed by § 26 of Chapter 356 of the Public Laws of 1965, which repeal was effective December 1, 1965 coincidentally with the effective date of the Maine Rules of Criminal Procedure, Rule 7 of which implicitly continues the provisions of the statute. Rule 7 M.R.Crim. Proc., and § 7.7 of Maine Practice, Glassman. The appellant demonstrates neither prejudice in the misstatement of his residence nor prosecution of the point in his brief. The point is without merit.

■ Appellant seasonably requested the Court to give the jury five instructions dealing with the treatment by the jury of circumstantial evidence, which instructions were refused, upon the basis that the rule which the requested instructions reflected had been adequately covered in the charge. With this we agree.

The points of appeal which require our attention and which, in fact, are the points

upon which the appellant chiefly relies are those having to do with the treatment of the witness B.

Prior to the trial of the accused in May, 1966, B had elected to proceed by information and had entered a plea of guilty to the entry at, and larceny from, the Bowl-a-Drome. At the trial of the appellant, B was called as a witness for the State.

The following are excerpts from the record while B was being questioned by the County Attorney:

"Q. * * * Now whether or not you saw the defendant on February 25, 1966?

"A   I don't remember.

"Q   Well were you with David McFarland in February?

"A   Sometimes.

"Q   Were you with him the time that you went to Waterville?

"A   Yes.

"Q   And you were one of the boys that was with David McFarland when they hired the taxi to come to Skowhegan?

"A   I don't remember.

        *      *      *      *      *      *

"Q   How many times did Mr. Donna (the taxi driver) drive you from Waterville to Skowhegan?

"A   Couple.

"Q   Those couple of times was one of the fellows with you David McFarland?

"A   I don't remember.

"Q   You don't remember.  Were you with David McFarland when the Skowhegan Bowlodrome was broken into?

"A   He didn't break into it with me I don't think.

        *      *      *      *      *      *

"Q   * * *  (D)o you now stand convicted of the crime of breaking and enter-

ing into the Bowlodrome in Skowhegan back in February 25, 1966?

"A   Yes I do.

"Q   Who was there with you at that time?

"A   When I got convicted?

"Q   No, when you broke and entered into the Bowlodrome?

"A   I don't really remember."

At this point the County Attorney claimed that the witness was hostile and after the Court explained to the witness that he could not invoke the Fifth Amendment, that he appeared in Court as any other witness and subject to the witness' oath, as to which admonition the witness acknowledged understanding, the Court addressed him as follows:

"Q   Now I want you to search your memory and I will ask you whether or not there was anybody with you at the time you broke and entered and stole the money. You either remember or you don't—

"A   I can't say for sure.

"Q   —whether there was anybody with you.  If you can't remember if there was anybody—he says he can't remember.  You say that you had been drinking?

"A   Yes sir.

"Q   And where had you been drinking.

"A   Silver Dollar.

"Q   And that is in Waterville?

"A   Yes.

        *      *      *      *      *      *

"Q   Do you remember how you got from Waterville to Skowhegan?

"A   Partly, in a taxi.

"Q   Can you remember whether there was anyone with you besides the operator of the taxi?

"A   Well, there was two others with me.

"Q Do you remember who they were?

"A Not really.

\*    \*    \*    \*    \*    \*

"Q Do you remember whether he (McFarland) was one of them or not?

"A He went down there with me.

"Q He went down to the Silver Dollar?

"A Yes.

"Q But you say you don't remember whether he came to Skowhegan with you?

"A I don't know if it was him or not.

"Q Do you remember whether you came in a taxi cab or not?

"A Yes, I think we did.

"THE COURT: You may treat him as a hostile witness and ask him some further questions if you wish to."

To this ruling defense counsel recorded an objection, upon which is based the points of appeal associated with this phase of the trial.

State v. Benner, 64 Me. 267 is a case as close to our point as we have found. In that case the charge was for arson and witness M, who had had a conversation with the accused, was called to the stand. The case at page 270 quotes from the record:

*Q.* "Did he say anything about their buildings at Anthony's?" *Ans.* "I don't think he did say anything about his buildings."

*Q.* "Don't you remember anything he said about Mrs. Holland at that place?" *Ans.* "I don't remember the words, but he didn't like her very well. It has been so long I can't remember the words."

*Q.* "Tell it as near as you can, Mr. Motz." *Ans.* "About as much as I heard him say was that she swore to a lie, and she should not come to his house again; if she did, he would kick her out."

*Q.* "Did he say anything about burning?" *Ans.* "Well"—[Objection interposed by Mr. McNichol, who said to the court: "Does your honor admit that?" and the judge replied: "Yes, to this witness. He is an unwilling witness."] The question was then repeated, in the same words. *Ans.* "Well, my memory is so poor I don't want to say anything about it. We talked there a good deal, one way and another. I don't know"—

Exceptions were taken to the Court's permitting cross-examination of the witness M and, in overruling the exception, the Court said at page 279:

"But it may happen that the witness may be adverse in sympathy and interest to the party by whom he is called. Cross-examination of an opponent's witness is allowable. Why? Because, being called by him, it has been imagined that there was some tie of sympathy or interest, which would induce partiality on the part of the witness in favor of the party, who called him. If the witness is from any cause adverse to the party calling him, the same reasoning which authorizes and sanctions cross-examination, more or less rigorous, equally requires it when the party finds that the witness, whom the necessities of his case has compelled him to call, is adverse in feeling, is reluctant to disclose what he knows, is evasive or false. Important as interrogation may be, if the witness is friendly, to remove uncertainty and indistinctness, and to give fullness and clearness, doubly important is it, if the witness be dishonest and adverse, to extract from reluctant lips, facts concealed from sympathy, secreted from interest, or withheld from dishonesty. Cross-examination may be as necessary to elicit the truth from one's own, as from one's opponent's witness. When the necessity exists, equal latitude should be allowed in the one case as in the other. The occasion for the exercise of this right must be determined by the justice presiding. It can be by no one

else. Its allowance is a matter of discretion, and not the subject of exception.

"The presiding justice, finding Motz to be an unwilling witness for the state, allowed leading questions to be proposed; and permitted him to be cross-examined by the counsel calling him. This was in manifest furtherance of justice and in entire accordance with judicial decisions. Moody v. Rowell, 17 Pick. [Mass.], 490; York v. Pease, 2 Gray, [Mass.], 282; Green v. Gould, 3 Allen [Mass.], 465."

The granting of leave to the State to cross-examine the witness produced by it was discretionary. There is no error.

Any reversable error associated with this phase of the trial must arise, if at all, from the principle, well established, that a presiding Justice is proscribed from casting aspersions on the credibility of a witness. The extent to which a witness is to be believed is entirely for the jury. A substantial body of case law has dealt with this principle,[1] with no uniformity in application, each case turning upon its facts.

The point was not raised in *Benner,* where the Court ruled in the presence of the jury that the witness was "unwilling." While it may be conceded that characterizing, in the presence of the jury, a witness as "unwilling" is less nocuous than characterizing him as "hostile" and that this area of trial procedure is a sensitive one, no case has been called to our attention, or can we find any, which equates a ruling only of "reluctance," "unwillingness" or "hostility" on the part of a witness as a basis for permitting cross-examination, with the rule that disparaging remarks to the prejudice of the witness' credibility constitute re-

versible error. See Annot. 83 A.L.R.2d 1128.

There is no prejudicial error in the ruling addressed to the County Attorney that: "You may treat him as a hostile witness and ask him some further questions if you wish to."

Appeal denied.

---

I. 53 Am.Jur., Trial § 82; Annot. 83 A.L.R.2d 1128; 127 A.L.R. 1385; Schmidt et al. v. St. Louis R. Co. (1899) 149 Mo. 269, 50 S.W. 921 [1], 923; State v. Hyde (1911) 234 Mo. 200, 136 S.W. 316 [27], 333; State v. Rogers (1917) 173 N.C. 755, 91 S.E. 854, 855, L.R.A.

1917E, 857; Heitfeld v. Benevolent & Protective Order of Keglers (1950) 36 Wash.2d 685, 220 P.2d 655 [11, 12], 663, 18 A.L.R.2d 983; and Lee, Jr. v. Artis (1964) 205 Va. 343, 136 S.E.2d 868.