**STATE of Maine**

v.

**Donald J. WAITE a/k/a Donald Thompson.**

Supreme Judicial Court of Maine.

Aug. 24, 1977.

Thomas E. Delahanty, II, Dist. Atty., J. Scott Davis, Asst. Dist. Atty., Auburn, for plaintiff.

Beliveau & Beliveau by Albert J. Beliveau, Jr., Rumford, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and GODFREY, JJ.

WERNICK, Justice.

Indicted on November 5, 1975 for having committed, on or about October 6, 1975, the crime of assault and battery high and aggravated in nature, defendant Donald J. Waite was tried before a jury in the Superior Court (Oxford County) on April 14–15, 1976. The jury found defendant guilty as charged, and he has appealed from the judgment of conviction entered against him.

We deny the appeal.

The jury was entitled to find these facts.

Accompanied by his girlfriend, Beth Freeman, defendant was operating a yellow truck on Route 2 in the vicinity of Rumford on October 6, 1975. They came upon 2 hitchhikers, Lewis Taylor and Dale Young. Taylor was carrying an orange backpack and a green sleeping bag. Defendant offered the hitchhikers a ride, and they climbed into the open back of the truck. Defendant and Taylor knew each other from prior relationships, but it happened that Taylor did not notice that the driver of the truck was defendant. Soon, defendant drove the truck off Route 2 onto a side road and stopped. He went into the open back area of the truck and attacked Taylor, using his fists, his feet and a hammer.[1] Dale Young rushed to the nearby trailer of Esther Crockett and excitedly told her to call the police because someone was being beaten. Esther Crockett called the police. She later had occasion to see Taylor in badly beaten condition.

After the incident with Taylor, Beth Freeman was operating defendant's truck farther along the road. From the open back of the truck defendant observed two

1. It was defendant's testimony that Taylor had in his hand a cement trowel at the time defendant was approaching Taylor and, for this reason, defendant claimed that he had acted in self-defense.

friends, Roxanne Bennett and Karen Curtis. He had Beth Freeman stop the truck, and he tossed Taylor's green sleeping bag to Roxanne, simultaneously stating to her that he had taken it from a hitchhiker whom he had beaten up, and he did not want it anymore because the police were chasing him.

### · 1.

■ We find no merit in defendant's first contention that the evidence was legally insufficient to support the conviction. Even if defendant is correct that parts of Taylor's testimony were internally contradictory and were contradicted in important respects by the testimony of Beth Freeman and defendant, it was the exclusive province of the jury, as the fact-finder, to resolve such evidentiary conflicts and decide whom, and what, to believe.

### 2.

We also reject defendant's claim that the presiding Justice committed reversible error in admitting in evidence, over appropriate objection by defendant, the testimony of Esther Crockett concerning various extra-judicial statements Dale Young made to her in an excited manner. One utterance was:

"... call the police, because they were trying to kill a guy in back of the house"

and another, which was cried out by Young as a truck passed by, was: "That's the truck."

At the time of this trial the Maine Rules of Evidence were in effect.

We may assume, without necessarily so deciding since the point is arguable, that the utterances were hearsay. Even so, the presiding Justice correctly admitted them in evidence. Evidence previously adduced justified a belief by the presiding Justice that Young made the utterances while he was still "... under the stress of excitement" caused by the "startling event"

about which he was speaking to Esther Crockett. Rule 803(2) Me.R.Evid.[2]

Elsewhere in her testimony, however, Esther Crockett mentioned another statement made to her by Dale Young which precipitated questions going beyond "excited utterance" admissibility.

When Esther Crockett was first asked to testify about Young's statements to her telling her to call the police, counsel for defendant, as mentioned above, objected. An ensuing colloquy between defense counsel and the presiding Justice made apparent that defense counsel's ground of objection was that Young's statements had been made after "quite a bit of time had passed", —the point being, presumably, that the Young statements could not qualify as "excited utterance[s]" in conformity with Rule 803(2) Me.R.Evid. because Young was no longer "under the stress of excitement caused by the event . . . ." The presiding Justice disagreed. Stating explicitly that the testimony already in the case showed that Young was speaking to Esther Crockett "very shortly after the alleged event took place", the presiding Justice ruled admissible Young's statements relating to the "startling event" about which Young was speaking to Esther Crockett. As we have already decided, this ruling was correct because there was evidence supporting the presiding Justice's conclusion.

The prosecuting attorney then undertook further questioning of Esther Crockett concerning Young's "excited utterance[s]" to her. She was in the process of giving an answer, having gone so far as to say:

"... he [Young] just said that he wanted me to call the police, . . . he said *this guy named Donny* is beating up a guy that . . . [Young was] hitchhiking with, and he [Young] said *Donny claimed* that . . . .", (emphasis supplied)

---

2. Under Rule 803(2) Me.R.Evid. "not excluded by the hearsay rule" is an:

"*Excited utterance.* A statement relating to a startling event or condition made while the

declarant was under the stress of excitement caused by the event or condition."

when defense counsel interrupted to renew his previously stated objection. Again, the presiding Justice overruled the objection—correctly on the basis stated above—and instructed the witness to answer. Esther Crockett answered:

> "*He* said something about, that there had been a kidnapping charge, and that this other guy had testified against him, . . . and that he was beating him up because of this . . . ." (emphasis supplied)

Counsel for defendant then said to the presiding Justice:

> "Your Honor, may I assume that my objection carries throughout this whole testimony?"

Defense counsel was assured by the presiding Justice that the objection still carried.

The additional facet involved in this answer of Esther Crockett is that *if* the first word of the answer, the pronoun "he", was intended to refer to Dale Young, then Dale Young was reporting to Esther Crockett a past incident involving a kidnapping charge, and this would plainly be beyond the scope of the excited utterance exception to the hearsay rule.

We are satisfied, however, that the presiding Justice had ample justification to conclude that the "he" at the beginning of the answer referred not to Dale Young but to "Donny", the defendant Donald Waite—the "Donny" who was the person Young had told Esther Crockett was beating up a hitchhiker and who during the course of the attack was making a "claim" which Esther Crockett, as a witness, was about to describe when defense counsel interrupted her answer.

It was already shown in evidence that Esther Crockett was a total stranger to Lewis Taylor, to the defendant Donald Waite and also to Dale Young—at least until Young came into her house. Hence, Esther Crockett herself would know nothing about past relationships between defendant Waite and Taylor which involved kidnapping charges and Taylor's testifying against defendant; she knew of these matters only because she heard about them from Dale Young. Moreover, it was also in evidence that Dale Young was a total stranger to defendant Donald Waite as well as to Lewis Taylor, at least until Young and Taylor came upon each other while hitchhiking shortly before defendant gave them a ride in his truck. Thus, when Young spoke to Esther Crockett, it was highly unlikely that Young knew about defendant's and Taylor's past relationships—as involving a situation in which Taylor had testified against defendant Donald Waite in connection with a kidnapping charge against defendant—unless Young had learned of these matters by hearing defendant Donald Waite state them in the course of beating up Taylor as the reason for defendant's making the attack. Thus, the reasonable interpretation of Esther Crockett's testimony is that in Young's "excited utterance[s]" to her Young reported to Esther Crockett a statement defendant Donald Waite had made while he was beating up Taylor.

So construed, the testimony of Esther Crockett was admissible in evidence pursuant to Rule 805 Me.R.Evid.:

> "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."

Applying the two-step approach projected by this Rule, we find, here, that: (1) Young's statements made to Esther Crockett concerning the "startling event" of defendant's sudden attack on Taylor were, as decided ante, admissible in conformity with the "excited utterance" hearsay exception provided in Rule 803(2); and (2) insofar as the "excited utterance" of Young to Esther Crockett subsidiarily incorporated a statement which had been made by another declarant—i. e., a statement by *defendant* which Young heard defendant make during the occurrence of the "startling event" inducing Young's "excited utterance[s]"—such statement of defendant was itself admissible in evidence as the "admission" of a

party in conformity with the "exclusion"[3] provided in Rule 801(d)(2) Me.R.Evid.

The totality of Young's "excited utterance" to Esther Crockett, even as subsidiarily including an extra-judicial "admission" of defendant which Young heard defendant utter while defendant was beating up Taylor, was correctly admitted in evidence.

### 3.

As a third point on appeal, defendant asserts that the presiding Justice committed reversible error in permitting the State to cross-examine Roxanne Bennett when she was testifying as a witness called by the State.

The record is plain that all matters concerning the State's claim to the presiding Justice that Roxanne had become an unexpectedly "hostile" witness were submitted to, and evaluated by, the presiding Justice outside the presence of the jury. Also, the presiding Justice made his ruling—

"that there's sufficient evidence of a change in what this witness has said between yesterday and today to permit . . . [the State] to cross-examine her"

—in the absence of the jury. All that the jury was aware of, then, was that the State's attorney asked Roxanne Bennett some questions in the nature of an impeaching cross-examination.

Defendant contends that because this impeachment by the State of its own witness was authorized by a ruling of the presiding Justice, it is immaterial that all matters connected with the claim of the witness' "hostility" which induced the ruling, as well as the ruling itself, had occurred in the absence of the jury. Defendant argues that by making the ruling he did, the presiding Justice became responsible for the aspersion which was cast by the State on the credibility of its own witness. This, defendant says, violates the holding of *State v. McFarland,* Me., 232 A.2d 804 (1967).

The claim is patently without merit since *State v. McFarland* holds precisely the opposite of defendant's contention. *McFarland* decided, first, that a presiding Justice has discretion to grant

"leave to the State to cross-examine the witness produced by it . . . ." (p. 809)

The Court then decided, additionally, that even though in *McFarland* the presiding Justice had declared the witness "hostile" *in the jury's presence,* such

"ruling . . . of . . . 'hostility' on the part of a witness as a basis for permitting cross-examination . . .",

is not the equivalent of the

". . . disparaging remarks to the prejudice of the witness' credibility [which would] constitute reversible error." (p. 809)

As to the case at bar in which the jury heard no mention whatever of the hostility of the witness Roxanne Bennett, *State v. McFarland* is an *a fortiori* precedent that the instant contention of defendant fails.

### 4.

Defendant asserts, as a last point he deems worthy of consideration in this appeal,[4] that the presiding Justice committed reversible error in refusing to give a defense-formulated instruction on self-de-

---

**3.** In Field & Murray, Maine Evidence, at p. 242, the Commentary on Rule 805 clarifies that the requirement in Rule 805 of conformity with an "exception" to the hearsay Rule encompasses extra-judicial statements which are not strictly "exceptions" to the hearsay rule but are "exclusions" from the category of hearsay—such as the "admission" of a party which is "excluded" from the category of hearsay by Rule 801(d)(2).

**4.** Defendant briefed one other point of appeal based on the fact that the State had called Karen Curtis as a witness (without objection, however, by defendant), whose name did not appear in the list, furnished to defendant by the State, of the witnesses the State intended to call. At oral argument defendant acknowledged, as we now hold, that this issue has been settled adversely to defendant's position by our recent decision in *State v. Tullo,* Me., 366 A.2d 843 (1976).

fense.[5] There is nothing to this claim. The presiding Justice had given the jury instructions on self-defense which, in themselves, were adequate. Thus, when the Justice refused to instruct further, as requested by defendant—on the grounds, as stated by the Justice, that

> "[i]t's too closely aligned with the evidence. I think I have given them the proper law as it relates to the right to use such force as is reasonably necessary to repel the attack",—

the presiding Justice acted in the appropriate exercise of a sound discretion reposed in him. As this Court made plain in *Isaacson v. Husson College,* Me., 332 A.2d 757, 762 (1975), quoting from *State v. Smith,* 65 Me. 257, 269 (1876):

> "When a judge has once given the law arising upon the evidence fully and correctly, he is under no obligation to repeat the propositions at the request of a party in such form as the whim or shrewdness of counsel may suggest as likely to produce an impression favorable to his side of the case. A refusal to do this is matter of discretion, and not exceptionable."

The entry is:

*Appeal denied.*

All Justices concurring.

DELAHANTY, J., did not sit.

---

5. The requested instruction was:

"If you should find that Lewis Taylor did have or did brandish a trowel in the direction of defendant, I instruct you that the defendant had the right to use force of such degree as to disarm Mr. Taylor, neutralize the assault, and Mr. Taylor's ability to pursue any further assaults."