JOSEPH J. GORMAN, MARY KEATING, JENNIE L. RYAN AND MATILDA OLIVER, RESPONDENTS, v. ELIZABETH-UNION-IRVINGTON LINE, INCORPORATED, A CORPORATION, AND JOHN ANTHES, APPELLANTS.

Submitted February 15, 1929—Decided October 14, 1929.

For the respondents, *Robert Newton Crane*.

For the appellants, *Schneider & Schneider*.

The opinion of the court was delivered by

CASE, J. The case comes up on appeal from judgments rendered by a jury in the Union County Circuit of the Supreme Court. The plaintiffs sued on distinct causes of action, consolidating their claims in a single suit.

Traffic on Morris avenue, Elizabeth, because of street operations, was limited to one-half the width of the highway and was obliged to pass in one-way formation, the flow to and fro being regulated by a flagman. Conformably to the signal a car owned and driven by plaintiff Joseph J. Gorman, and containing the other plaintiffs, entered the lane of traffic, passed through the narrowed way and in going out at the far end collided with a bus owned by the corporate defendant and driven by defendant Anthes. Gorman's car was damaged. The occupants were rendered unconscious, and, suffering from varying degrees of physical injury, were all taken to the hospital. All of the plaintiffs sued for bodily injuries and Gorman included property damage. Judgments in dif-

ferent amounts were rendered for all of the plaintiffs against both defendants. The appellant-defendants filed nine grounds of appeal, but in their brief have argued only five, and these will be considered in the order presented. The first three points relate only to plaintiff Gorman, the fourth point relates only to plaintiff Oliver; the fifth concerns all the plaintiffs.

Appellants' first point is that the court committed error in permitting plaintiff Gorman to be asked: "At the time of the happening of this accident what were your actual earnings?" .The only objection stated was that the source of the earnings had not been shown. The court, in admitting the question, informed defendants' counsel that he might later move to strike the testimony if it should turn out that the source was not proper. Before the question was asked it was in evidence that plaintiff's business was "soliciting from house-to-house well-known household products of all kinds." Forthwith the character and methods of that business—the house-to-house sale of household articles—were developed. The inquiry was further pursued on cross-examination as to the part taken by the plaintiff Gorman, the part taken by the remaining plaintiffs who were "solicitors" for Gorman, the number of employes and compensation paid them. Gorman also testified that he kept no books as to his earnings. Counsel for defendants did not exercise his privilege of moving to strike the answer to the disputed question. It appears to us that the ground of his objection was fully negatived, if not by the testimony preceding the question, certainly by that which followed; and that the defendant suffered no harm by the ruling. *Freeman* v. *Bartlett,* 47 *N. J. L.* 33. It may be noted that the amount named by the witness in response to this question was appreciably less than given in response to the one next discussed.

Appellants' second point alleges error in this question allowed to be asked of Gorman: "For a period of a year preceding the accident what were your average earnings?" The objection stated was that the question did not indicate the proper measure of damage, in that "it takes a period of time

which is not proper as showing what his income would be over a longer period of time." The objection goes specifically to the fact that the question was limited to one year.

As already stated, the plaintiff kept no books as to his earnings. Under this condition, when the testimony contains a reasonable amount of detail on the subject-matter, a witness is ordinarily allowed to testify from memory as to his average profits. Unless this class of testimony is to be entirely excluded upon principle, there must be circumstances under which its introduction will be admissible. That it is admissible under proper circumstances has been held by this court in the case of *Rabinowitz* v. *Hawthorne,* 89 *N. J. L.* 308. In the case just cited it was said by this court that "the test seems to be, whether under the testimony the profits are capable of being estimated with a reasonable degree of certainty." But the present contention is that the inclusion within the question of a limitation to one year as the time during which the average was to be taken injected error. We do not so consider. An average must necessarily, either by specific mention or by implication, refer to some period. The period of a year covers the four seasons and makes a convenient and usual cycle for measuring earnings of persons occupied as was Gorman. It was within defendants' province to cross-examine as to longer or shorter periods if they so chose. The evidence was competent to go to the jury, to be taken into consideration by them, and allowed such weight as they, in the exercise of good sense and sound discretion, should think it entitled to. *New Jersey Express Co.* v. *Nichols,* 33 *N. J. L.* 434; *East Jersey Water Co.* v. *Bigelow,* 60 *Id.* 201.

The third point turns on the refusal of the court to strike Gorman's testimony as to the value of the "stock" contained in his car and that had been completely destroyed. The only reason given for the motion to strike was that on cross-examination Gorman was unable to state whether the goods had been destroyed or lost. The question as to value had been asked and answered before objection was made. That objection was not timely. *Delaney* v. *Erie Railroad Co.,* 97 *N.*

*J. L.* 434; 98 *Id.* 558. Gorman was rendered unconscious by the accident and when he regained consciousness was in the surgical ward of the Elizabeth Hospital. He was thereafter in bed, either at the hospital or elsewhere, for two weeks. The fair inference from the testimony is that his ignorance as to the actual disposition of the goods was due to the disability caused by the accident, which in turn, as the jury found, was due to defendants' negligence. The wrong-doer cannot escape making reparation for the loss caused by depriving the plaintiff of the protection which the presence of the driver in his right senses would have afforded. *Brower* v. *New York Central and Hudson River Railroad Co.,* 91 *Id.* 190.

It is further contended that the trial court erred in not striking out Dr. Stein's testimony regarding defective hearing on the part of Mrs. Oliver; the reasons assigned being that there was no connection shown between the ear condition and the accident and that the witness was not qualified "to say as to that except what the patient tells him." The point is based on a motion, in general terms, "to strike out the doctor's testimony in regard to the ear condition."

Dr. Stein was on duty at the Elizabeth General Hospital when Mrs. Oliver was taken there on the day of the accident. He then examined her and also treated her during her stay at the hospital from January 16th to February 5th. His qualifications as a physician and surgeon were admitted on the record by the defendants. On the day of the trial, November 16th, 1928, he again examined Mrs. Oliver. He testified that while Mrs. Oliver did not, while at the hospital, complain about her ear, she did have a fracture of the nose, that the nose fracture was complete and involved the nasal bone and extended alongside to the molar on the left side, that the outside of the face was swollen, that the outside and inside of the nose were swollen and that she had other enumerated fractures and injuries. The examination made by the doctor on the day of trial brought forth from Mrs. Oliver the complaint that she could not hear well with the left ear, and Dr. Stein found on examination that with that ear she could hear ordinary conversational tones at a distance of three

feet. The doctor also testified affirmatively on the probability that the ear condition was due to the accident. Mrs. Oliver testified: "When I move my head you would think there was something crushing in it." The disputed evidence portrayed sufficient causative connection to go to the jury. It was not in conflict, but was quite in accord, with the rule stated in *Potter* v. *Batt,* 72 *N. J. L.* 470: "Damage to be recovered must be the natural and proximate consequence arising from the wrong complained of."

We find no error in this ruling.

The fifth and last point is that the trial court erroneously refused the defendants' motions for nonsuits and for direction of verdicts. While there was, as usual, a conflict in the testimony, there was, nevertheless, evidence to sustain a finding that the plaintiffs, while slowly proceeding, at the direction of the flagman, through the obstructed and one-way-traffic part of Morris avenue, were run into by the defendants' bus coming from the opposite direction and "cutting out" of its line; that the bus, at the time and place of impact, was on the wrong side of the traffic way; that the defendants' bus was being driven rapidly; that a Packard car was standing, likewise at the direction of the flagman, awaiting the traffic signal to go, facing in the same direction as and ahead of the bus, and that the driver of the bus, unable to stop in a straight course without a rear-end collision with that car, turned without signal or warning to the left and thus into the course where plaintiffs had a right to be, where they had to pass in order to move along the highway and where they in fact were; and that the plaintiffs were injured as a direct and proximate result of defendants' act.

Motions for nonsuit and for the direction of a verdict for the defendants, for the purpose of the motions, in effect, admit the truth of the evidence, and of every inference of fact that can be legitimately drawn therefrom, which is favorable to the plaintiffs, but deny its sufficiently in law; and where such evidence or inferences of fact will support a verdict for the plaintiffs, such motions must be denied. *Barry* v. *Borden Farm Products Co.,* 100 *N. J. L.* 106. The evidence entirely justified the refusal to nonsuit and to direct a verdict.

There is no error in the judgment below and it must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, KALISCH, BLACK, CAMPBELL, LLOYD, CASE, BODINE, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 15.

*For reversal*—None.