Jean **MICHAUD**

v.

**John STECKINO.**

Supreme Judicial Court of Maine.

Aug. 31, 1978.

Linnell, Choate & Webber by G. Curtis Webber (orally), John R. Linnell, Auburn, Edward J. Beauchamp, Lewiston, for plaintiff.

Clifford & Clifford by Jere R. Clifford, Lewiston (orally), Preti, Flaherty & Beliveau by Robert E. Burns, Portland, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, WEATHERBEE,* and ARCHIBALD, JJ.

DUFRESNE, Active Retired Justice.[1]

It was noontime January 27, 1971. Jean Michaud, the plaintiff, was on his way to Portland on Route 202 and was about to make a. right turn to enter the driveway leading to his niece's home in New Gloucester when his automobile was struck from the rear by a motor vehicle operated by the defendant, John Steckino. The force of the impact caused the plaintiff to suffer a whiplash injury. As a result of the accident, the plaintiff immediately felt a burning pain in his neck which radiated down his spine the length of his back. He has been suffering this neck and back pain continuously since the collision, to such an extent that he had to curtail his work activity to a considerable degree, besides having his sleep interrupted and his social life and recreational interests disrupted.

The plaintiff's complaint for compensation for his personal injuries and consequential damages was tried in April 1975 before an Androscoggin County jury which returned a verdict in his favor in the amount of $100,000.00. Contending that errors were committed by the Justice below in the admission of evidence and in his refusal of certain requests for jury instructions, which the defendant claims had an inflationary impact on the issue of damages, Steckino moved for a new trial on damages only, pursuant to Rule 59, M.R.Civ.P., on the

ground that the jury award is excessive. As provided under Rule 59, the defendant in his reference motion suggested to the Court below that the plaintiff, as a means of avoiding a new trial, be given the opportunity to remit such portion of the jury verdict as the trial Justice should judge to be excessive. The defendant appeals from the denial of his motion. We deny the appeal.

## 1. Future Surgery

The record shows that the plaintiff has been experiencing pain in his neck and lower back with consequential partial disablement ever since the accident and that, notwithstanding a course of conservative treatment for some four years, the wearing of a cervical collar for about six months, the use of a traction gear prescribed by one of the doctors, his submission to heat therapy, his faithful compliance with all medical advice, his unceasing search for relief and rehabilitation from a variety of medical practitioners in the general practice of medicine, including highly skilled doctors in the field of neurology and orthopedic surgery, Michaud, so he testified, still suffers with little improvement from the constant pain in his neck and lower back brought on by the accident. Chiropractic and psychiatric treatment also proved fruitless.

Dr. Victor Parisien, the plaintiff's expert witness whose qualifications as an orthopedic surgeon were admitted, diagnosed the plaintiff's ailment as

"a herniation, a ruptured disc or discs in the neck and in the lumbar area. Hard to say how many, but at least one in each level."

The doctor further testified that, after four years, Michaud had reached

"perhaps not a plateau, but, I don't think that he's going to improve any, and, yes, I think he's reached almost an end point. I

* WEATHERBEE, J., sat at oral argument and participated in conference, but died prior to the preparation of the opinion.

1. Mr. Justice Dufresne sat at oral argument and participated in consultation while he was

Chief Justice, and, on order of his successor, Mr. Chief Justice McKusick, was empowered and authorized to continue his participation in the case in his capacity of Active Retired Justice.

think that the only thing that can happen now is, it can get worse."

He specifically found as established from the plaintiff's limitation of movement and the x-rays a permanent impairment at twenty percent of the body of the neck so far as his neck injury was concerned, and twenty percent of the body in regard to his back injury, or a total permanent physical impairment of forty percent.

Dr. Thomas F. Shields, another orthopedic surgeon and witness for the plaintiff, also testified to the permanent character of Michaud's physical condition:

"Pain is something I can't see or feel for the patient, but, from examination and everything, it's lasted so long, I think it's probably permanent in his situation."

Dr. John P. Greene, an orthopedic surgeon and witness presented by the defense, confirmed the plaintiff's chronic cervical strain which in the doctor's opinion had reached an end result.

But there was medical evidence in disagreement respecting the permanent character of the plaintiff's condition. In other words, it was an issue in the case, whether Michaud's pain problem as he described it in his testimony, as well as his physical impairment resulting from the accident, was a permanent condition.

It is in connection with the question of the permanency of the plaintiff's pain involvement that the issue of future surgery to relieve the pain arose. In estimating the results of a fusion operation, which involves an excision of the ruptured disc, possibly with a fusion of the spine, both in the neck and in the lumbar area in this case, Dr. Parisien testified that the results for pain relief are not one hundred percent, but may reach only fifty to seventy percent and, in some cases, people are made worse by this type of surgery.

Indeed, Dr. Parisien was asked on direct examination:

"Q. At the time of your examination, did you make a determination as to whether or not there would be a surgical procedure which would be available on election by Mr. Michaud, which might correct this situation?

"A. Well, there is a possibility that surgery may be necessary. I haven't actually proposed it to him, so far, because the results ___

"[Defendant's counsel]: Your Honor, unless it's a probability, then, I object. I believe that the reason for the requisite certainty has not been established for such procedure, and I would object to any testimony as being speculative.

"[Plaintiff's counsel]: It's preliminary question, your Honor. I'm going to get into that.

"The Court: I'll permit the answer. You may answer.

"A. I would _ _ _ I haven't really proposed. I have proposed some forms of treatment to Mr. Michaud in an attempt to relieve him of some of his pain, and I think primarily, he should have further conservative non-operative treatment, and, if that fails, then, a consideration could be given to operation."

Following the doctor's answer that he was not "proposing" any surgical intervention at that time, a specific and limited answer which the Court below had permitted, counsel for the plaintiff asked Dr. Parisien what sort of operation he was talking about. Without objection and without any request for a limiting instruction from the Court, the doctor was allowed to give a brief description of the mechanics of a fusion operation. Through cross-examination, counsel for the defendant sought to have the doctor concede that surgery would be advisable only if there were evidence of progressive neurological deficit, a contention with which the doctor disagreed, although admitting that some doctors do subscribe to the same. At any rate, no motion to strike the doctor's testimony was made at the close of his court appearance.

Similarly, Dr. Shields was permitted to give a more elaborate description of a fusion operation without objection or reserva-

tion and without any request to limit the purpose of such evidentiary details of an operation which was not being recommended at the time and which was elective on the part of the plaintiff at any rate. Furthermore, the doctor was allowed to state the length of hospital confinement in such operations. As with Dr. Parisien, the defendant's counsel on cross-examination of Dr. Shields had the doctor concede that only in some cases would surgery be advisable in the absence of progressive neurological deficit. Again, no motion to strike the doctor's testimony relating to surgery was made at the termination of his court appearance.

It is only at the close of all the evidence that counsel for the defendant moved to strike so much of Dr. Parisien's and Dr. Shields' testimony as dealt with the disc surgery. Defendant's counsel, in support of his motion, stated to the Justice below that he had objected initially and believed there was a continuing objection to such testimony. Plaintiff's counsel advised the Court that "it was agreed he [defendant's counsel] had a continuing objection;" nevertheless, he argued that the plaintiff's position was that the possibility of the disc operation is part of the overall medical picture of what Michaud faces for the future and that, since no evidence of the costs of the operation or hospital confinement had been introduced, no prejudice had resulted to the defendant. The Court denied the motion, ruling that "[t]here's sufficient evidence for the jury to consider these matters."

■ We agree with the defendant's contention it is well settled law that damages are not recoverable when uncertain, contingent, or speculative. Damages must be grounded on established positive facts or on evidence from which their existence and amount may be determined to a probability. They must not rest wholly on surmise and conjecture. *Gottesman & Co. v. Portland Terminal Co.*, 139 Me. 90, 27 A.2d 394

(1942); *Lawson v. McLeod,* 152 Me. 67, 123 A.2d 199 (1956); *Ginn v. Penobscot Company,* Me., 334 A.2d 874, 887 (1975). See also *State v. Mitchell,* Me., 390 A.2d 495 (1978).

■ A mere possibility that future pain or suffering might be caused by an injury, or that some disability might result later therefrom is not as such sufficient to warrant an assessment of damages therefor. Mere surmise or conjecture as the term "possibility" usually connotes cannot be regarded as legal proof of an existing fact or of a future condition that will result. Expert witnesses can give their opinion respecting future consequences that are shown to be probable, from which it may be inferred that they are reasonably certain to follow.[2] See *Stevens v. Illinois Cent. R. Co.,* 306 Ill. 370, 137 N.E. 859 (1922); *Michalski v. Wagner,* 9 Wis.2d 22, 100 N.W.2d 354 (1960); *Hahn v. McDowell,* 349 S.W.2d 479, 482 (Mo.App., 1961); *Healy v. White,* 173 Conn. 438, 378 A.2d 540 (1977); *Evans v. Liquori,* 374 A.2d 774 (R.I., 1977).

■ There must be evidence of the probability of surgery recommendation before the medical expert may testify about a possible need of a future operation. See *Ernshaw v. Roberge,* 86 N.H. 451, 170 A. 7 (1934). In the instant case, notwithstanding the plaintiff's testimony that Dr. Shields had suggested an operation, both Dr. Parisien and Dr. Shields himself expressly stated they had not as yet recommended surgery.

■ However that may be, the offending evidence was not wholly irrelevant. The plaintiff was seeking damages for an injury which he claimed to be permanent. The permanency of his injury was in dispute. The plaintiff's injury could not be considered a permanent injury if the permanency of the injury could have been avoided

**2.** We are aware that at times doctors will talk in terms of "possibilities" where it is obvious upon a consideration of their testimony as a whole that they mean probabilities, and that the reference rule will not apply in such circumstances. *Royal Indemnity Company v.*

*Hume,* 477 S.W.2d 683 (Tex.Civ.App., 1972); *O'Neill v. Cross County Hospital,* App.Div., 402 N.Y.S.2d 633 (1978). See also *Scholle v. Continental Nat. Am. Group,* 44 Ill.App.3d 716, 3 Ill.Dec. 350, 358 N.E.2d 893 (1976).

by submitting to treatment by a physician, including surgery, when a reasonable person would do so under the same circumstances.

There is a positive duty upon a person injured through the negligence of another to minimize his damages and to use reasonable diligence in securing medical or *surgical* aid. *Wells v. Gould and Howard,* 131 Me. 192, 160 A. 30 (1932); see also *Potts v. Guthrie,* 282 Pa. 200, 127 A. 605 (1925); *Cero v. Oynesando,* 48 R.I. 316, 138 A. 45 (1927); *Ouillette v. Sheerin,* 297 Mass. 536, 543, 9 N.E.2d 713, 717 (1937); *Budden v. Goldstein,* 43 N.J.Super. 340, 128 A.2d 730 (1957).

Thus, the plaintiff had the burden of proof that his injury is a permanent condition, i. e. a condition which he could not avoid wholly or partially by submitting to reasonable surgical treatment. Even though the defendant has the burden of proving that the plaintiff unreasonably failed to mitigate his damages by submission to surgery, evidence having a tendency to show that the surgical operation to effect a cure or lessen the pain in an effort to minimize damages would involve substantial hazards with doubtful results is relevant in support of the permanency of the injury. Where the evidence in the instant case was that the plaintiff's injury would otherwise be permanent, it was proper to have the jury consider the nature of the surgical treatment available, its chance of success, the accompanying pain and suffering involved, to determine if under the circumstances a reasonable person might well decline to undergo the surgical intervention, even if recommended, a refusal to submit to the same under such circumstances imposing no restriction against recovering full damages for the injury as a permanent one. *Zimmerman v. Ausland,* 266 Or. 427, 513 P.2d 1167, 62 A.L.R.3d 1 (1973); see also *Casimere v. Herman,* 28 Wis.2d 437, 137 N.W.2d 73 (1965); *Couture v. Novotny,* 297

Minn. 305, 211 N.W.2d 172 (1973); *Hildyard v. Western Fasteners, Inc.,* 33 Colo.App. 396, 522 P.2d 596 (1974).[3]

If the defendant was of the opinion that the evidence of the details of the possible operations might be too prejudicial, in that its probative value under the circumstances might be substantially outweighed by the danger that such evidence might submerge the issues in a sea of unfairness or mislead the jury respecting the particular purpose for which it might be considered, he should have sought its exclusion on that ground (M.R.Evid. 403), or should have requested a limiting instruction (M.R. Evid. 105). Absent such specific articulation or such request to limit the scope of such evidence, we must assume that the defendant was not insisting on his original objection. See *State v. Rogers,* Me., 389 A.2d 36 (Opinion August 2, 1978).

Furthermore, the tendered concession, made by counsel for the plaintiff at the time of the defendant's motion to strike the evidence of Dr. Parisien and Dr. Shields at the close of all the evidence, to the effect that counsel for the parties had agreed that the defendant's original objection would be considered as a continuing objection, was not compelling upon the Justice below. He did not agree to treat it so, and under the circumstances of this case we cannot say that there was an abuse of discretion on the part of the trial Court. From this record, there is nothing to indicate that the presiding Justice was, or should have been, aware at the time the evidence was introduced that the defendant was maintaining his objection thereto.

The rule is well established that "objections to evidence should be stated *at the time it is offered,* and with sufficient definiteness to apprise the court and the opposite party of the precise grounds of the objection; and all objections not thus specifically stated, should be held to

**3.** For the application of the doctrine of mitigation of damages in Workmen's Compensation cases, see *Beaulieu's Case,* 124 Me. 83, 126 A. 376 (1924); *Stratakos v. Wright, Pierce, Barnes and Wyman,* Me., 272 A.2d 363 (1971); *Gordon v. Maine Reduction Company, Inc.,* Me., 358 A.2d 544 (1976); *Thibodeau v. Etscovitz Chevrolet,* Me., 365 A.2d 804 (1976).

**532**

be waived." (Emphasis provided). *State v. Savage,* 69 Me. 112, 114 (1879).

To the same effect, see *Monroe Loan Society v. Owen,* 142 Me. 69, 46 A.2d 410 (1946). The requirement of contemporaneous objection to evidence which a party believes to be inadmissible is a salutary one. Its chief purpose is to afford the trial court an opportunity to rule on the evidence before it is heard by the jury. To await the close of the evidence and seek for the first time to rule out evidence by motion to strike, if such procedure were allowed as an ordinary trial practice, would frustrate the beneficial objectives of the simultaneous objection rule, so-called, would lead to abuse and subject the parties to unnecessary costly retrials.

█ Additionally, a review of the evidence convinces us that the admission of the doctors' description of the possible disc operations which they had not as yet recommended, even if the defendant's objections had been timely taken, did not in this case prejudice the defendant in connection with the amount of the damages the jury awarded the plaintiff. It was stipulated that the plaintiff had a life expectancy of twenty-one years and a work time potential of thirteen years. The jury could find from the evidence that the plaintiff was permanently disabled to the extent of forty percent of his body, that he would be unable personally to participate in his tree removal and paving business during the thirteen years of his work expectancy and that for the rest of his life he would be tormented by the pain and suffering which has been his lot since the accident. We cannot say that it would have been unreasonable for the jury to render the award which they did, even if the evidence of the possible disc operations had been kept out of the case.[4]

### 2. Tree Removal Evidence

The defendant contends that the Court below erred in admitting evidence of loss of tree removal work in proof of damages in the nature of loss of future earnings.

4. We do not intimate that evidence of possible disc operations could not be kept out in a proper case upon proper timely objection in the

█ Such evidence was admissible. The plaintiff testified that he could no longer climb trees and at least one of the medical experts stated that such physical exertion was inadvisable, given the plaintiff's condition. The jury could reasonably conclude that Michaud had suffered a total loss of his earning capacity in this aspect of his work.

█ The defendant further objects to this evidence, because it did not consist of actual bookkeeping entries of income actually received for tree removal work, but rather involved estimates thereof given by Michaud based on his records which indicated total receipts for individual jobs without breakdown respecting the tree removal portion of the same. Some other estimates or approximations rested on affidavits of customers disclosing the type of work Michaud had undertaken for them, from which he stated the proportion of the total receipts allocable to the tree removal part of the respective projects.

There was no error in admitting such evidence. It is not disputed that Michaud had either performed or supervised all the paving and tree removal work, and, hence, had personal knowledge of facts on which to base his estimates. Customer affidavits merely served to refresh his recollection.

█ Evidence of past earnings is, of course, relevant to the issue of damages from impairment of future earning capacity and such evidence need not be mathematically precise.

"The assessment of damages for impairment of earning capacity rests largely upon the common knowledge of the jury or other fact-finder, sometimes with little aid from the evidence; helpful evidence is admissible, although it does not furnish any mathematical valuation of the impairment." *Goldstein v. Sklar,* Me., 216 A.2d 298, 309 (1966).

sound discretion of the trial justice pursuant to M.R.Evid. 403.

The fact that Michaud testified in terms of estimates of lost income from tree removal work, based on facts within his personal knowledge, did not impregnate his conclusory opinion with such uncertainty as to deprive it of probative value. Rather, although precluding exactitude, the term "estimate," in its lexical meaning, conveys the idea in the user of calculating, computing, giving an approximation with respect to, amount, number, cost, or the like. To estimate does not import mere guesswork, but rather involves an approximate judgment. See *O'Hehir v. Central New England Ry. Co.,* 152 App.Div. 677, 137 N.Y.S. 627, 633 (1912).

There is no way to determine how much of the damage award is attributable to the loss of the plaintiff's tree work business. Strictly speaking, the recovery in a personal injury action is for loss or diminution of earning capacity.

"The element of damages in question is properly described as compensation for diminution of earning power, or conversely as the value of that part of the plaintiff's capacity to work and earn of which he was deprived." *Doherty v. Ruiz,* 302 Mass. 145, 146, 18 N.E.2d 542, 543 (Mass. 1939).

Evidence of past earnings is admissible, because it provides the jury with a yardstick for measuring earning capacity. The issue is not, whether the loss of tree removal income, taken by itself, could support an award of damages, but, whether the evidence as a whole furnishes a reasonably accurate picture of what the injured party such as the plaintiff in the instant case could have earned, if he had not been disabled as a result of the accident. There was testimony that Michaud was a healthy, hard working man who rebelled at his forced idleness. The record also indicates that he was turning down requests for tree removals up until the time of trial, and that he had to drop customers which he formerly had serviced on a regular basis. These singular facts, in and of themselves, may disclose little, but together they serve as a practical and reliable guide to a common-sense evaluation of the plaintiff's earning capacity.

"Direct and specific evidence of the extent of the impairment, measured in money, is not necessary; it is not essential to recovery of damages for permanent disability that there be in the evidence for purposes of comparison proof of income before and after the accident in support of diminution of earning power.

. . .

"The assessment of damages for impairment of earning capacity rests largely upon the common knowledge of the jury or other fact-finder, . . ." *Goldstein v. Sklar,* Me., 216 A.2d 298, 309 (1966).

The defendant contends that some tree removal jobs were mistakenly included by the plaintiff in his estimates for the years 1968 and 1970, when the evidence was that the work had been done in other years. Such inaccuracies may affect credibility, but it was for the jury to reconcile the plaintiff's testimony from an overall perspective. Resolving such inaccuracies into a reasonable determination of the plaintiff's loss of earning capacity by reason of his disablement to perform tree removal work would certainly not overtax the capabilities of the jury. See *McKenzie v. Edwards,* 140 Me. 33, 33 A.2d 412 (1943).

The defendant asserts that he was prejudiced by the Court's refusal to give the following instruction:

"Unless you find that the amount of plaintiff's probable future earnings from the tree work can be determined with reasonable certainty as to amount, and unless you find that such work is so well established that it can reasonably be anticipated that such amounts would probably have been earned in the future, then plaintiff has not met his burden of proving damages with reasonable certainty. I instruct you that proof of the volume of tree work for but a single year is not legally sufficient to base an award for loss of earnings from such work."

We disagree.

A party is not entitled to have his personal formulation of the law read to the

jury, provided the jury is otherwise adequately instructed. See *Isaacson v. Husson College,* Me., 332 A.2d 757, 762 (1975); *State v. Smith,* 65 Me. 257, 269 (1876).

■ Also, a party is not entitled to have his requested special instruction given to the jury, unless it states the law correctly, it is supported by the facts of the case, it is not misleading or confusing, it is not already sufficiently covered in the given charge or unless the refusal to give it would be prejudicial to the requesting party. See *Towle v. Aube,* Me., 310 A.2d 259 (1973); *Labbe v. Cyr,* 150 Me. 342, 111 A.2d 330 (1954); *Desmond v. Wilson,* 143 Me. 262, 60 A.2d 782 (1948).

■ A review of the given charge in its entirety plainly demonstrates that the jury was correctly informed on this aspect of the case. *Towle v. Aube,* supra, 310 A.2d at 266.

■ The requested charge was incorrect in law in trying to disallow any award for loss of earnings from the tree removal work, should the jury have to base the same on a single year's earnings. Proof of the volume of tree removal work for a single year was competent evidence to go to the jury for its consideration, to be given such weight as the jury, in the exercise of good sense and sound discretion, thought such evidence was entitled to in its determination of the plaintiff's loss of earning power. *Gorman v. Elizabeth-Union-Irvington Line,* 105 N.J.Law 602, 147 A. 402 (1929). Furthermore, the record indicates that there was evidence of more than one year's volume of such work.

### 3. Failure to Instruct on Tax Status of the Award

Under Section 104 of the Internal Revenue Code of 1954 (26 U.S.C. § 104), awards for impairment of future earning capacity stemming from personal injury actions are exempt from the federal income tax. Such an award is also exempt from state income taxation by operation of 36 M.R.S.A., § 5121, which defines taxable income for a state resident as the individual's adjusted gross income for federal purposes. The defendant requested an instruction designed to inform the jury of these facts.

■ The proffered requested instruction reads as follows:

"I instruct you that damages awarded by you, if you make any such award, are not subject to federal or state income tax."

The defendant contends that the Court's refusal so to instruct the jury constituted reversible error. We disagree.

We note initially that the requested instruction merely alerted the jury to the fact that their award of damages would be tax free to the plaintiff. The true cautionary instruction would add the following:

"Should you find that plaintiff is entitled to an award of damages, then you are to follow the instructions already given to you by this Court in measuring those damages, and in no event should you either add to or subtract from that award on account of federal [or state] income taxes." See *Domeracki v. Humble Oil & Refining Co.,* 443 F.2d 1245, 1248–1249 (3rd Cir. 1971).

Was this truncated requested instruction suggested for the very purpose of having the jury consider, at least subconsciously, the free tax status of the award of damages which they were to assess at present value for loss of earning power as reflected through the loss of future earnings which jurors know would have been taxable, if the plaintiff had not been prevented from earning the same by reason of the accident, in the hope of obtaining a reduced award in the final analysis?

We agree, however, that the avowed purpose of such a request is to discourage a jury from enlarging an award, because they may entertain an erroneous belief that the plaintiff will be called upon to pay income taxes thereon.

It may be conceded that there does exist a possibility of harm if the jury is left uninformed respecting the tax status of the award; on the other hand, it is conceivable that the plaintiff could be prejudiced if

they were told of the tax exemption provision. As stated in *Hall v. Chicago & North Western Railway Company*, 5 Ill.2d 135, 125 N.E.2d 77, 86 (1955):

"In either case, however, the possibility is speculative and conjectural, and such being the case, it is better to instruct the jury on the proper measure of damage and then rely on the presumption that they will properly fulfill their duty by following said instructions."

If such an instruction as suggested by the defendant were proper, what objection could there be to a requested instruction informing the jury that the fees of the plaintiff's counsel (ordinarily not recoverable as damages—see *Gagnon v. Turgeon*, Me., 271 A.2d 634 (1970)) are not elements of damage, even though plaintiff will have to pay them out of the award or that the defendant will not be paying the verdict out of his own pocket, since there is insurance coverage. These matters are of no concern to the court or jury. Similarly, whether the plaintiff has to pay a tax on the award or not is a matter that concerns only the plaintiff and the government.

■ Again, as well said in *Hall v. Chicago & North Western Railway Company*, Id., 125 N.E.2d at 86:

"[I]f the jury were to mitigate the damages of the plaintiff by reason of the income tax exemption accorded him, then the very Congressional intent of the income tax law to give an injured party a tax benefit would be nullified."

In the case of insurance liability coverage, this Court said in *Sawyer v. J. M. Arnold Shoe Company*, 90 Me. 369, 38 A. 333 (1897):

"We think that to allow juries, in cases of this kind, to take into consideration the fact that an employer was insured against accidents, would do more harm

than good, and would increase the already strong tendency of juries to be influenced, in cases of personal injury, especially where a corporation is defendant, by sympathy and prejudice."

This Court has consistently maintained to this day that the existence or non-existence of liability insurance coverage is wholly immaterial and is prejudicial when introduced in the course of a trial in a negligence action; the rule would apply to the court's charge to the jury. See *Downs v. Poulin*, Me., 216 A.2d 29 (1966); *St. Pierre v. Houde*, Me., 269 A.2d 538 (1970). As stated in *St. Pierre v. Houde*, the impropriety of consideration of insurance or the lack of it in personal injury cases has its origin in the long established rule that the wealth or poverty of a party is not a proper issue in such cases. Similar improper influences could possibly result from a jury instruction on the tax free status of a personal injury damage award.

Even though most of the commentators, who have dealt with the subject, favor the giving of such an instruction,[5] the overwhelming weight of authority is that the refusal so to instruct on request is not reversible error. *Scalise v. Central Railroad Company of New Jersey*, 129 N.J.Super. 303, 323 A.2d 525 (1974); *Nichols v. Marshall*, 486 F.2d 791 (10th Cir., 1973); *Elston v. Shell Oil Company*, 481 F.2d 608 (5th Cir., 1973); *Davis v. Fortino & Jackson Chevrolet Company*, 510 P.2d 1376 (Colo.App., 1973); *Norfolk Southern Railway Company v. Rayburn*, 213 Va. 812, 195 S.E.2d 860 (1973); *Senter v. Ferguson*, 486 S.W.2d 644 (Mo.App., 1972); *Raines v. New York Central Railroad Company*, 51 Ill.2d 428, 283 N.E.2d 230 (1972), cert. denied 409 U.S. 983, 93 S.Ct. 322, 34 L.Ed.2d 247 (1972); *Gorham v. Farmington Motor Inn, Inc.*, 159 Conn. 576, 271 A.2d 94 (1970); *Stallcup v. Taylor*,

5. See, e. g. Feldman, Personal Injury Awards: Should Tax-Exempt Status be Ignored?, 7 Ariz. L.Rev. 272 (1965); Burns, A Compensation Award for Personal Injury or Wrongful Death Is Tax Exempt: Should We Tell the Jury?, 14 DePaul L.Rev. 320 (1965); Morris & Nordstrom, Personal Injury Recoveries and the Federal Income Tax Law, 46 ABA J. 274 (1960); Nordstrom, Income Taxes and Personal Injury Awards, 19 Ohio St.L.J. 212 (1958); 2 Harper & James, The Law of Torts 1327–28, § 25.12 (1956). Contra: Note, Income Tax As a Factor in Measuring Personal Injury Awards, 35 N.C. L.Rev. 401 (1957); Note, 8 Ark.L.Rev. 174 (1953).

62 Tenn.App. 407, 463 S.W.2d 416 (1970); *Henninger v. Southern Pacific Company*, 250 Cal.App.2d 872, 59 Cal.Rptr. 76 (1967); *Kawamoto v. Yasutake*, 49 Haw. 42, 410 P.2d 976 (1966); *McWeeney v. New York, N. H. & H. R. R. Co.*, 282 F.2d 34 (2nd Cir., 1960); *Spencer v. Martin K. Eby Construction Company*, 186 Kan. 345, 350 P.2d 18 (1960); *Hardware Mutual Casualty Co. v. Harry Crow & Son, Inc.*, 6 Wis.2d 396, 405, 94 N.W.2d 577, 581 (1959); *Bracy v. Great Northern Railway Company*, 343 P.2d 848 (Mont., 1959), cert. denied 361 U.S. 949, 80 S.Ct. 403, 4 L.Ed.2d 381 (1960); *Louisville & Nashville Railroad Co. v. Mattingly*, 318 S.W.2d 844, 848 (Ky., 1958); *Briggs v. Chicago Great Western Railway Company*, 248 Minn. 418, 432, 80 N.W.2d 625, 636 (1957); *Highshew v. Kushto*, 235 Ind. 505, 134 N.E.2d 555 (Ind.1956)—235 Ind. 509, 135 N.E.2d 251 (Ind.1956); *Missouri-Kansas-Texas Railroad Co. v. McFerrin*, 156 Tex. 69, 90, 291 S.W.2d 931, 945 (1956); *Mitchell v. Emblade*, 80 Ariz. 398, 298 P.2d 1034 (1956); *Hall v. Chicago & North Western Railway Company*, 5 Ill.2d 135, 125 N.E.2d 77 (1955). Contra: *State Highway Department v. Buzzuto*, 264 A.2d 347 (Del., 1970); *Geris v. Burlington Northern, Inc.*, 277 Or. 381, 561 P.2d 174 (1977) (prospectively only), but see *Plourd v. Southern Pacific Transportation Co.*, 513 P.2d 1140 (Or.1973); *Burlington Northern, Inc. v. Boxberger*, 529 F.2d 284 (9th Cir. 1975) (also prospectively only); *Domeracki v. Humble Oil & Refining Co.*, 443 F.2d 1245 (3rd Cir. 1971), cert. denied 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165 (1971) (also prospectively only).

The fallacy of the defendant's contention that, if the instruction is not given, the jury is likely to enhance the award by including an amount for income taxes, is based on the unjustified assumption that the jury will formulate their own rules in assessing damages, contrary to the instructions of the court. Such misconduct on the part of juries cannot be taken for granted and the verdict in the instant case does not reflect such transgression on the part of the jury.

 This Court must presume that the jury followed the trial court's instruction respecting the several elements of damage to which the plaintiff was entitled, once they had decided on the question of liability, and that they did not base any part of their dollar verdict on matters not mentioned in the evidence nor in the charge. It must be presumed that the jurors were influenced in their verdict *only* by the law as given to them by the trial justice and the legal evidence presented to them during the course of the trial, and that no significant extraneous matter infiltrated their decision-making. *Goldstein v. Sklar*, Me., 216 A.2d 298, 302 (1966); *Quinn v. Moore*, Me., 292 A.2d 846, 852 (1972); *McCann v. Twitchell*, 116 Me. 490, 494, 102 A. 740 (1917). Any other rule would assume misconduct on the part of the jury, an assumption in which we are not justified to indulge.

### 4. Excessiveness of Verdict

 As a general rule the assessment of damages is within the sole province of the jury. The parties are entitled to their considered judgment, and this Court will not substitute its own opinion for the jury's determination, unless it appears that the jury acted under some bias, prejudice or improper influence, or reached its verdict under some mistake of law or in disregard of the evidentiary facts. *MacLean v. Jack*, 160 Me. 93, 198 A.2d 1 (1964); *Conroy v. Reid*, 132 Me. 162, 168 A. 215 (1933); *Cayford v. Wilbur*, 86 Me. 414, 416, 29 A. 1117 (1894).

 In actions for personal injuries, in which the damages, as in the instant case, consist of the permanent partial loss or diminution of earning power of the injured party, past and future, as well as monetary remuneration for pain and suffering of a permanent nature, the jurors in measuring the loss must project themselves into the probabilities of the future and evaluate the damage award in terms of present value, a very difficult task for human computers. No more than approximations in the light of their knowledge and experience should be expected from the jury and the ultimate award must be left to their sound sense and good judgment as seems to them

to be fairly compensatory of the injured party's injuries. *Davis v. Tobin*, 131 Me. 426, 434, 163 A. 780, 783 (1933); *Goldstein v. Sklar*, supra.

We repeat what we said in *Goldstein v. Sklar*, supra, 216 A.2d at page 310:

"What exact portion of the verdict may have been returned for pain and suffering, and what part for loss of earning capacity, it is impossible to state with any degree of accuracy. The injuries have been accepted by the jury as serious. It must be assumed that they agreed to an actual life expectancy for the plaintiff of 26 years from the date of the injury. [Here, the parties stipulated that the plaintiff had a life expectancy of 21 years and a work force expectancy of 13 years.] Continuous pain for that length of time would command a substantial exchange in money values.

 * * * * * *

"Although the verdict may seem large, it reflects the considered opinion of the jury within the range of evidence of sufficient probative character, and where it does not appear that bias, prejudice or improper influence or any mistake of fact or law had any part therein, no reason exists to deprive the plaintiff of the full extent of his verdict."

See *Fotter v. Butler*, 145 Me. 266, 75 A.2d 160 (1950); *McMann v. Reliable Furniture Co.*, 153 Me. 383, 140 A.2d 736 (1958).

Other points of appeal have been raised and argued. We have carefully examined the same. They lack merit.

Therefore, the entry will be

Appeal denied.

Judgment affirmed.

DELAHANTY, J., did not sit.