**Leo DiFIORE**

v.

**CASCO NORTHERN BANK, N.A.**

Supreme Judicial Court of Maine.

Argued Jan. 4, 1993.
Decided March 12, 1993.

Ray Pallas (orally), Westbrook, for plaintiff.

James C. Hunt (orally), Claire Andrews, Robinson, Kriger, McCallum & Greene, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

ROBERTS, Justice.

Casco Northern Bank, N.A., appeals from a judgment entered in the Superior Court (Cumberland County, *Silsby, J.*) in favor of plaintiff Leo DiFiore on his personal injury claim. After a bench trial, the court determined that the Bank, through its employee, was negligent and DiFiore was not contributorily negligent. The court assessed damages of $40,000 and, accordingly, entered judgment for DiFiore in that amount. We affirm the judgment.

I.

Leo DiFiore had a stroke in 1947 that left him paralyzed on his right side and unable to speak but for a few words and sounds. Over several years, DiFiore learned to communicate with those close to him through sounds, hand gestures, and facial expressions.

On December 15, 1987, DiFiore drove his car to the drive-through window of Casco Northern Bank to cash a check. Because the window in his car malfunctioned, he opened the door to conduct the transaction. He held on to the armrest on the door, pulled himself up, and stood outside on his left leg. The teller then opened the transaction drawer. DiFiore felt and heard the drawer hit the car door which, in turn, hit his left knee.

After a couple days of severe pain, DiFiore went to Mercy Hospital to have his knee examined. He then consulted a second doctor, who drained fluid from his knee on two occasions. He next had three office visits with a third doctor. Finally, DiFiore went to a fourth doctor at the Togus VA Hospital, who drained fluid from his knee three times. Although his third doctor diagnosed the condition as either a torn meniscus or a degenerative lesion on the femur caused by a traumatic injury, and recommended surgery, DiFiore declined surgery because he was afraid of the prospect of losing the ability to walk.

There was evidence that before December 15, 1987, DiFiore did all of the cleaning, laundry, and grocery shopping for the household. He shoveled snow and frequently washed his car. He walked regularly, played beano four times per week, frequently went shopping and to flea markets with his wife, and enjoyed dancing with her. After the accident, however, DiFiore's participation in those activities either ended or was greatly diminished.

Alfred DiFiore, the plaintiff's son, testified about markings on the plaintiff's car and the damages that DiFiore had suffered as a result of the accident. The Bank sought to have Alfred DiFiore disqualified as an "interpreter" for his father. Furthermore, the Bank filed a motion *in limine* to exclude the plaintiff's testimony on the ground that he was not competent. The Bank argued that DiFiore could not adequately express himself so as to be understood and that he lacked reasonable ability to remember. The trial court denied the motion.

At the end of the bench trial, the court found that DiFiore was a business invitee of the Bank and that the teller acted as the Bank's agent. The court found that the teller's actions were negligent and that there was no contributory negligence on the part of the plaintiff. With respect to damages, the court found that there was no loss of income suffered, there were $337 in special damages, a torn meniscus that might require surgery costing $4,000 to $5,000, fear that surgery would confine the plaintiff to a wheelchair, pain and suffering resulting from the injury, and considerable diminution in plaintiff's lifestyle. The court further found that the injury was permanent and the condition continuing.

## II.

The Bank argues that the trial court erred in determining that DiFiore was competent to testify, both because he was incapable of expressing himself concerning the matter so as to be understood by the judge either directly or through interpretation by one who can understand him and because he lacked any reasonable ability to remember the matter. The determination that a witness is competent to testify under M.R.Evid. 601 is reviewed for clear error. *State v. Hussey,* 521 A.2d 278, 280 (Me.1987). Moreover, "[t]he tendency is increasingly to resolve doubts in favor of letting the [factfinder] hear the evidence and appraise its credibility." Field & Murray, *Maine Evidence* § 601.2, at 193 (1987). Here the trial court determined, after both attorneys conducted a *voir dire* of the witness, that DiFiore was competent to testify because the trial court was able to understand his answers.

The Bank's contention that DiFiore was not competent to testify because he could not adequately remember the event at issue is likewise unpersuasive. Although the Bank cites several examples during DiFiore's testimony when he could not remember the information he was being asked to recall, he generally testified about the incident in question and the damages he suffered as a result thereof. We find no clear error in the trial court's determination that DiFiore was competent to testify.

In addition, the Bank contends that the trial court abused its discretion in appointing Alfred DiFiore, the plaintiff's son, to assist him at trial. We disagree. Under M.R.Civ.P. 43(*l*), "[t]he court may appoint a disinterested interpreter of its own selection, including an interpreter for the deaf." The present situation, however, does not fall within the typical "disinterested interpreter" rule. In the special circumstances of this case, only persons who are more likely to be somewhat interested are able to assist DiFiore in developing his testimony. This differs markedly from a typical situation where a person is appointed to interpret a foreign language or sign language. The action of the trial court in permitting the plaintiff's son to assist him is more akin to the exercise of discretion to permit leading questions.

## III.

The Bank also argues that the trial court erroneously found that DiFiore had a permanent impairment. A factual finding is not clearly erroneous if there is competent evidence in the record to support it. *Harmon v. Emerson,* 425 A.2d 978, 982 (Me.1981). In this case the permanent injury found by the court is distinguishable from a permanent impairment. Unlike a finding of specific loss of use of the knee or an incapacity that would permanently prevent DiFiore from performing specific tasks, the court simply found that there was a condition which, because of DiFiore's refusal to take the risk of surgical correction, was inevitably permanent. That factual finding was not clearly erroneous.

## IV.

The Bank next argues that the $40,000 damage award was clearly excessive and unsupported by competent evidence in the record. "As a general rule, the assessment of damages is within the sole province of the [factfinder]." *Michaud v. Steckino,* 390 A.2d 524, 536 (Me.1978). We have previously stated that generally the ultimate damage award should be left to the factfinder's "sound sense and good judgment as seems to [the factfinder] to be fairly compensatory of the injured party's injuries." *Id.* at 536–37.

Here there is no evidence that the factfinder acted under any bias, prejudice, or improper influence, or reached its verdict under some mistake of law or in disregard of the evidentiary facts. *See id.* at 536. There is evidence in the record, however, that DiFiore suffered immediate and ongoing pain, that his lifestyle has been greatly diminished, that he now lives with the constant fear that he will be confined to a wheelchair, and that he endured a great deal of pain during the medical treatments that were performed on his knee. There is no basis to disturb the damage award.

V.

The Bank's challenges to the court's negligence analysis are without merit and we need not address them.

The entry is:

Judgment affirmed.

All concurring.