USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________ No. 96-2258 CHRISTOPHER MOULTON, Plaintiff, Appellee, v. THE RIVAL COMPANY, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. David M. Cohen, U.S. Magistrate Judge] _____________________ ____________________ Before Boudin, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Ernest J. Babcock, with whom Elizabeth A. Germani, George D. __________________ _____________________ __________ Guzzi and Friedman & Babcock were on brief, for appellant. _____ __________________ Charles Harvey, with whom Harvey & Frank was on brief, for ______________ _______________ appellee. ____________________ June 20, 1997 ____________________ LYNCH, Circuit Judge. A one-year-old boy sustained LYNCH, Circuit Judge. _____________ severe, disabling burns when he was left alone in a room where a Rival Company electric potpourri pot was operating on the floor. A diversity action was brought against the company asserting claims under Maine law of strict liability, negligence and breach of warranty. A jury found in favor of the plaintiff on the strict liability and negligence claims and awarded $2.2 million. The company filed post-trial motions alleging a host of procedural and evidentiary errors and seeking judgment as a matter of law. The trial court denied the motions; the company appealed. We affirm. I We recite the facts as a jury could reasonably have found them. See Stevens v. Bangor & Aroostook R.R., 97 F.3d ___ _______ _______________________ 594, 596 (1st Cir. 1996). Gail Moulton, plaintiff's mother, purchased a Rival Model 3207 electric potpourri pot. Water and dried flowers or scented liquid and wax are heated in the pot and allowed to evaporate to perfume the air. The potpourri pot was a modified version of a Rival kitchen product, a one-quart slow cooker. The cover of the potpourri pot could not be secured to the pot and had a hole in its center, approximately one and three-quarters inches in diameter, to allow fragrance to escape. The date Rival sold this particular potpourri pot is not known. -2- 2 Literature accompanying the pot contained several warnings, including: "Close supervision is necessary when any appliance is used by or near children." Mrs. Moulton read the instructions and warnings and placed the potpourri pot under a table in a corner of the living room hidden behind pottery and baskets. In February 1995, she left her one-year-old son Christopher in the living room while she got him a drink from the adjoining kitchen. She heard a noise and returned to the living room to find the child sitting on the floor in a pool of liquid. The cover was off the pot, in the puddle of liquid potpourri. She did not notice where the pot itself was. No one knows exactly how the accident happened. It is reasonable to conclude either that the pot tipped over, spilling the heated liquid, or that the child took the cover off. In any event, the lid came off the pot, and the hot liquid came into contact with the child's arm and hand. Plaintiff's left hand and arm were severely burned in the accident. He spent over a month at the Shriners Burns Hospital in Boston undergoing extensive treatment. He will need extensive medical treatment in the future. His left hand and arm are entirely covered by scar tissue, which does not grow like normal skin. As he grows, the inflexible scar tissue must be released by surgical incisions to prevent his joints from growing abnormally; skin grafts are used to fill -3- 3 in the gaps, and a physical therapy regimen is necessary to restore movement to the hand. This cycle of growth, surgery and physical therapy will continue until the plaintiff stops growing, at around age twenty. The type of potpourri pot involved in the plaintiff's accident evolved from earlier products. Rival, which manufactures various household appliances, decided to market an electric potpourri pot. Before placing the item on the market, Rival submitted the item, which it called the Model 3207, for evaluation by Underwriters Laboratories ("UL"), an independent not-for-profit testing laboratory which sets and publishes safety standards; these standards are often adopted by the American National Standards Institute. UL replied that the pot did not meet the relevant safety standards. UL sent Rival a letter in June 1987 which stated that the potpourri pot heated liquids to temperatures exceeding the applicable standard, and noted that, since the lid had no means of being secured and had a one and three quarters inch hole in its center, it could not be relied upon as a barrier to prevent scalding. UL therefore refused to "list" the pot.1 However, by the time the UL report was issued, Rival had already set production to commence in  ____________________ 1. A "listed" product would bear a sticker indicating that the laboratory had determined that the product met a particular safety standard. -4- 4 August 1987. Despite UL's rejection, Rival decided to go ahead with its production plans anyway. Rival submitted the potpourri pot to ETL testing laboratories, a commercial (for profit) laboratory. ETL issued a report certifying that the potpourri pot met the very standard that UL had reported the pot failed to meet. The ETL report should have raised concerns on its face. The stated temperature in the report to which the pot heated liquids was too high to meet the applicable standard. The product was nonetheless put on the market. The Model 3207 potpourri pot was the only Rival product not listed by UL. This apparently troubled Rival officials. They ordered various tests to determine whether the item could be modified to meet the evolving safety standards adopted by UL. Rival's product safety engineer reported that UL had determined that water hotter than 149 degrees Farenheit could cause serious skin burns on contact and that the potpourri pot was designed to reach a temperature of 174 degrees Farenheit. Rival was also aware that UL took the position that this product, unlike cooking appliances, was likely to be "touched, bumped, handled, or even upset when used as intended." Consequently, UL wanted limitations placed on the temperature and quantity of the liquid and wanted a tight-fitting lid. Rival's competitors -5- 5 produced potpourri pots with locking lids. However, no modifications were made to the Model 3207. After the potpourri pot had been on the market for a short time, Rival began to receive reports of young children who were burned by accidental contact with the heated potpourri mixture.2 Rival still made no modification to the design. After 1991, the company changed the package insert to warn consumers that the contents of the pot were hot and that the pot should be kept out of the reach of children.3 Accidents continued to occur in the early 1990's. At some point, although the parties cannot pinpoint the exact date, a tag warning that the product could cause burns to the skin was placed on the cord of the Model 3206, a smaller version of the Model 3207 that lacked any cover. II Plaintiff filed suit against the Rival Company in November 1995 in federal court in Maine. The complaint alleged that Rival was legally responsible for the plaintiff's injuries because (1) the potpourri pot was defective and unreasonably dangerous as a result of its design; (2) Rival was negligent in designing the potpourri pot and/or in failing to warn users of the product's design  ____________________ 2. Some of the accidents involved the Model 3207 (the model in this case), while others involved a similar model. 3. The previous warning had stated that users should supervise closely when the pot was operated near children. -6- 6 defect; and (3) the potpourri pot failed to perform in accordance with the express warranty. Rival defended on the grounds that the product was safe, the warnings and instructions adequate, and the blame for the accident lay with the child's mother for placing the pot where her son could reach it and then leaving him unattended. After a one-week trial, the jury found in plaintiff's favor on the strict liability and negligence claims and awarded him $2.2 million in compensatory damages. III Post-Sale Duty to Warn ______________________ The primary issue raised by Rival is whether the district court erred in instructing the jury on negligent post-sale duty to warn. The trial judge charged:  When a manufacturer learns . . . of the dangers associated with the reasonably foreseeable use of its product after they are distributed, the manufacturer must take reasonable steps to warn reasonably foreseeable users about those dangers . . . . Rival argues that the Maine Law Court has never imposed such a post-sale duty on manufacturers and would not do so. The plaintiff responds that the majority of jurisdictions recognize a negligence-based post-sale duty to warn and that, if faced with the issue, Maine would do the same. We do not reach the issue of whether the Maine Law Court would recognize a negligence-based post-sale duty to -7- 7 warn because the jury verdict is adequately supported on a strict liability claim and the damages are the same. Further, no issues concerning the admissibility of evidence turn on this. The trial court separated the theories of strict liability, negligence and warranty both in the jury instructions and in the special verdict form. The jury stated on the special verdict form that it found the defendant liable on a strict liability theory as well as on a negligence theory. Even if the instructions involving negligent post-sale duty to warn were incorrect as a matter of Maine law, the finding of liability on the strict liability theory would be sufficient to support the judgment. Rival maintains the issue must nevertheless be reached. It argues that certain evidence was admitted at trial in support of the plaintiff's theory that there had been a negligent failure to warn and that this evidence was both prejudicial and irrelevant to any of the other legal theories advanced by plaintiff. The evidence in question concerns what the defendant terms a subsequent remedial measure: the placement of a warning tag on the electrical cord of the Model 3206 (which is smaller than the Model 3207 and does not have a cover).4 The defendant argues that if,  ____________________ 4. This modification is not a subsequent remedial measure for purposes of Rule 407 of the Federal Rules of Evidence. That rule does not apply where, as here, the modification -8- 8 as it claims, Maine would not recognize a negligent post-sale duty to warn, this evidence was improperly admitted and sufficiently prejudicial to warrant a new trial. We disagree. First, the trial court ruled that the warning tag evidence was relevant to the issue of whether there had been a negligent violation of a pre-sale duty to warn as well as of a post-sale duty to warn. Although the sequence of the placement of the warning tags and the sale of the appliance is unknown, the defendant never challenged this evidentiary ruling as to the pre-sale duty to warn. The point is waived. Furthermore, even assuming arguendo that it was error to admit the "cord tag" evidence, "the standard for reviewing a district court's nonconstitutional error in a civil suit requires that we find such error harmless if it is highly probable that the error did not affect the outcome of the case." Harrison v. Sears, Roebuck & Co., 981 F.2d 25, 29 ________ ____________________ (1st Cir. 1992). Here, there was ample evidence of defective design: the pot heated its contents to a dangerously high temperature and did not have a locking lid. Similar products produced by other companies did have a locking lid. The refusal of UL to list the product is particularly telling. We think it unlikely that the evidence  ____________________ preceded the accident involved in the current lawsuit. See ___ Bogosian v. Mercedes-Benz of N. Am., Inc., 104 F.3d 472, 481 ________ _____________________________ (1st Cir. 1997). -9- 9 of cord tags placed on the Model 3206 affected the liability determination. Evidence of Other Accidents ___________________________ Plaintiff put in evidence of eight accidents in which young children sustained burns after coming into contact with the heated contents of a Rival potpourri pot. Defendant objected to the introduction of this evidence, but the trial court overruled the objection. Review is for abuse of discretion. Espeaignnette v. Gene Tierney Co., 43 F.3d 1, _____________ ________________ 8 (1st Cir. 1994). In evaluating evidentiary rulings, "[t]he question is not whether we would strike the balance differently in the first instance, but whether the balance actually struck is so egregiously one-sided that it requires reversal." Id. ___ "Evidence of prior accidents is admissible . . . only if the proponent of the evidence shows that the accidents occurred under circumstances substantially similar to those at issue in the case at bar." McKinnon v. Skil ________ ____ Corp., 638 F.2d 270, 277 (1st Cir. 1981); Marois v. Paper _____ ______ _____ Converting Mach. Co., 539 A.2d 621, 625 (Me. 1988). The _____________________ defendant argues that there is insufficient similarity between the earlier accidents and plaintiff's accident, because the circumstances surrounding the spills were different. For example, in one of the earlier accidents, a child knocked over the table where the potpourri pot was -10- 10 located; in four others, a child became entangled in the cord and pulled the pot over. Furthermore, two of the accidents involved the Model 3206, a smaller pot with no cover at all. "Substantial similarity" is a function of the theory of the case. See Ponder v. Warren Tool Corp., 834 ___ ______ __________________ F.2d 1553, 1560 (10th Cir. 1987). Here, the plaintiff was burned by a large quantity of hot liquid escaping from a potpourri pot without a locking lid. Plaintiff sought the introduction of the evidence of the other accidents to show that the product as designed allowed the rapid escape of a significant amount5 of extremely hot liquid and was thus defective. Cf. Jackson v. Firestone Tire & Rubber Co., 788 ___ _______ ____________________________ F.2d 1070, 1083 (5th Cir. 1986). Under these circumstances, there was no abuse of discretion. Cf. P.B. Mutrie Motor ___ __________________ Transp., Inc. v. Interchemical Corp., 378 F.2d 447, 450-51 _____________ ____________________ (1st Cir. 1967). Medical Costs _____________ Plaintiff presented the expert testimony of a rehabilitation specialist as to the cost of plaintiff's future medical and rehabilitation needs. Rival says that the witness was not qualified and that his testimony lacked an adequate factual basis.  ____________________ 5. Even electric potpourri pots with locking lids will allow the escape of at least a very small amount of liquid if tipped over; the appliance must have openings to allow the fragrance to escape. -11- 11 A trial court has wide discretion in determining the admissibility of expert testimony, and we will reverse its decision only when there has been a clear abuse of discretion. Stevens, 97 F.3d at 600. The educational and _______ work experience of plaintiff's expert made him well-qualified to testify concerning theplaintiff's future medical expenses. A somewhat closer question is whether there was a sufficient factual basis for the expert testimony. Under Maine law, damages may not be recovered if they are contingent or speculative. Michaud v. Steckino, 390 A.2d _______ ________ 524, 530 (Me. 1978). They must be "determined to a probability." Id. ___ Rival makes a two-pronged argument. It first claims that the plaintiff failed to meet his burden of proof on the damages issue, because everyone involved in the case expects that the Shriners Hospital, which is treating the child, will continue to provide all necessary care free of charge. This argument is foreclosed by the collateral source rule. Under that rule, a plaintiff who has been compensated in whole or in part by a source independent of the tortfeasor is nevertheless entitled to a full recovery against the tortfeasor, to prevent the tortfeasor from gaining a windfall. Werner v. Lane, 393 A.2d 1329, 1335 (Me. 1978). ______ ____ Defendant then argues that the plaintiff has failed to prove future medical expenses to a reasonable certainty -12- 12 because the testimony of plaintiff's rehabilitation expert was different from that of the plaintiff's treating physician. Plaintiff's rehabilitation expert presented an itemized list of predicted future medical and rehabilitation expenses. The plaintiff's treating physician testified that it was impossible to predict the number or types of procedures the plaintiff will need in the future because the need for future care will depend on the plaintiff's growth pattern and how the plaintiff improves over time. There was an adequate foundation for the rehabilitation expert's testimony and the jury was therefore free to credit it. Cf. ___ Stevens, 97 F.3d at 600. _______ As to the misstatement by plaintiff's counsel in closing, when he mentioned "out of pocket" expenses, any harm was ameliorated by the trial court's immediate curative instruction. See Conde v. Starlight I, Inc., 103 F.3d 210, ___ _____ _________________ 213 (1st Cir. 1997). Testimony of Rival's President ______________________________ Defendant claims it was sandbagged when, at trial, plaintiff made use of a statement by a Rival official, from a deposition in another case, to impeach defendant's expert witness. Defendant argues it had no opportunity to place the company official's statement in its proper context. This argument is not well taken. The defendant did not request a continuance or any limiting instructions. Under these -13- 13 circumstances, we cannot say the trial court abused its wide discretion in admitting this evidence. Sufficiency of the Evidence ___________________________ Finally, the defendant argues that the trial court's denials of its Rule 50(b) motion for judgment as a matter of law and of its motion for a new trial should be reversed. It claims that the evidence, together with all reasonable inferences in the plaintiff's favor, is insufficient to support the verdict. Review is de novo. See _______ ___ Lama v. Borras, 16 F.3d 473, 477 (1st Cir. 1994). ____ ______ The defendant maintains that no reasonable jury could find that any action by Rival was the proximate cause of the plaintiff's injury. The defendant points to the Maine Law Court's statement that "a product bearing . . . a warning, which is safe for use if [the warning] is followed, is not in defective condition, nor is it unreasonably dangerous." Bernier v. Raymark Indus., Inc., 516 A.2d 534, _______ _____________________ 538 (Me. 1986) (quoting Restatement (Second) of Torts 402A _____________________________ cmt. j (1965)). However, this language explicitly applies only to claims that a product is unreasonably dangerous because it lacks an adequate warning. Bernier, 516 A.2d at _______ 538. That was not the crux of plaintiff's claim here. Plaintiff's theory was that the potpourri pot had design defects -- heating its contents to an excessively high temperature and no locking lid -- which made it unreasonably -14- 14 dangerous. There was sufficient evidence supporting the jury finding of liability on that theory of the case. Affirmed. ________ -15- 15